THE SAGUA *v.* THE GRACE AND THE RESCUE.[1]

THE GRACE *v.* THE SAGUA AND THE BATTLER.

*(District Court, E. D. Pennsylvania.* May 13, 1890.)

1. COLLISION—TUGS WITH TOWS—LIABILITY OF TUGS.
   Where tugs having tows in charge pass, and allow sufficient room, if their tows follow them, to pass safely, they cannot be charged with fault if the tows, through bad steering, collide, although they could have allowed more room.

2. SAME—LIABILITY OF TOWS.
   When a tow fails to follow her tug, and as a result a collision takes place, she must respond in damages.

[1] Reported by C. Berkeley Taylor, Esq., of the Philadelphia bar.

Libel for Collision by the brig Sagua against the schooner Grace and tug Rescue; also by schooner Grace against brig Sagua and tug Battler.

*Richard C. McMurtrie*, for the Sagua.

*Curtis Tilton* and *Henry R. Edmunds*, for the Grace.

*Alfred Driver* and *J. Warren Coulston*, for the Rescue.

*John F. Lewis*, for the Battler.

BUTLER, J. As the Sagua, in charge of the Battler, was passing up the river Delaware to Philadelphia on December 22, 1887, near 9 o'clock in the evening, she encountered the Grace passing down, in charge of the Rescue, opposite Billingsport. The Sagua and Battler were well over towards the eastern side of the channel, and the Grace and Rescue were slightly further west. The night was clear with bright moon. The Sagua is 127 feet long, of 366 tons burden, 9½ feet draught, was in ballast, and towed by a hawser 60 to 70 fathoms long. The Grace is 145 feet long, of 516 tons burden, 15 feet draught, was loaded with iron, towed by a hawser 50 to 60 fathoms long. At a distance of half a mile, and probably more, the Battler signaled the approaching vessels to port, and immediately ported herself. The Rescue answered promptly, and ported also. The latter passed the Battler and Sagua at a distance of 70 to 90 feet. The Grace, instead of following her tug, turned eastward after passing the Battler, and ran into the Sagua, striking the port side with her head at an angle near 45 deg., forcing her aground, and inflicting much injury. The Sagua libeled the Grace and Rescue, and was in turn, with the Battler, libeled by the Grace. Subsequently the Grace brought the Battler in to answer the Sagua's claim also. It is thus seen that the several vessels are charged with fault. A large amount of testimony has been taken, some part of which is irrelevant, some part improbable and incredible, and much that is contradictory and irreconcilable. To analyze and discuss it would be a waste of time; and I will do little more, therefore, than state conclusions.

As respects the Sagua, I find nothing to justify the charge against her. She was in proper trim, had her lights burning, and followed her tug, bearing eastward. She may, however, be responsible for the conduct of her tug, possibly, if the latter was in fault.

Was the Battler in fault? I find no reliable evidence that she was. Her course, and position in the channel, were proper. She was, I believe, well over to the eastern side. At a safe distance she signaled the approaching vessels to port, and, receiving a favorable answer, ported,—bearing as much eastward as was necessary and safe. The circumstances did not require her to stop, (she could not safely do so with the Sagua in her rear,) or take other precautions against danger. No danger was apparent until later, when no precautions were available.

Was the Rescue in fault? She answered and ported promptly when signaled, and passed the Battler and Sagua at a safe distance. There is difference of opinion respecting the distance. The witnesses capable of forming the most reliable judgment are those from the Battler, the

Sagua, and Rescue. Those from aboard the Grace could know little about it. Their situation was not favorable to judging. If the Grace had followed, no collision would have occurred. She might have passed a little nearer, because of the situation of her hawser, but the difference would have been unimportant. The distance would have been sufficient to avoid danger.

It is entirely clear, therefore, that the collision resulted from the Grace's sheer eastward, and from this alone. But for it there would have been no collision. I see no room whatever for controversy on this subject. The Grace's answer virtually admits it, and the testimony leaves no room for doubt. Instead of sheering to starboard when she received the signal, and following her tug, she held her course a little while, and then turned in the opposite direction, obliquely across the channel, and ran into the Sagua, striking her at an angle of nearly 45 deg. She asserts in excuse that her sheer was unavoidable; that it resulted from the situation in which she was placed, without fault of her own. If this is true, she is not responsible. In such case her tug is. Is she (the Grace) responsible,—was her sheer unavoidable? The case turns on the answer to this question. The burden is on her to prove that it was unavoidable. Presumably the rudder would control her course, and, in the absence of proof to the contrary, her sheer must be attributed to a starboard wheel. And besides, setting up the inability to control her course, as a defense, she must prove its existence. The alleged cause of this inability is the passage of the Battler near her track, and the commotion produced by the latter's screw. By this means, it is asserted, she lost control of her movements, and was forced over into the Battler's wake; and thus, without fault of her own, brought into collision with the Sagua. If this is true, I repeat, she is blameless, and the consequences must rest on her tug for running so near. There was plenty of water westward, and the tug should have kept further away, if such consequences were to be apprehended. The tug must be held to knowledge of the danger, (if it existed,) and was bound to avoid it by keeping further off.

Has the Grace proved her excusatory allegation? Many witnesses were examined respecting it, and their testimony is irreconcilable. A statement and discussion of this testimony is unnecessary. It is sufficient to say that the excuse is not proved. Indeed, I think the circumstances clearly disprove it. It is incredible that the commotion produced by the Battler, a small vessel, light and high in the water, could have had such an affect on one of the Grace's size, especially against the influence of both her hawser and rudder. It would have been quite as likely to affect the Battler, indeed much more so, because of her smaller size and draught; and it is quite as likely that a similar effect would have been produced on the Sagua by the Rescue's passage of her; and yet neither of these vessels were disturbed. Supposing the water to have forced the Grace over as alleged, it seems physically impossible that she should have been carried into the position assumed. The Battler had passed her some distance before she reached the Sagua, and as her

stern, with the rudder turned to starboard, would respond to the current much more readily than her head, she would have straightened up in the Battler's wake and met the Sagua head on. She could not have struck her in the side at an angle of 40 deg. The Sagua was following in the Battler's wake. It is not necessary to pursue the subject further. The Grace's excuse for her sheer cannot be accepted. In my judgment, not only is the weight of the direct testimony against her, but the inferences from undisputed facts, disprove her allegation. I have not overlooked the fact that her wheelman and another of her crew, swear that the wheel was to port. I do not, however, place any faith in this testimony. It was their duty to so place the wheel, and if they failed I would not expect them to admit it. Such men, generally feel an obligation to stand by their vessel when testifying, as well as under other circumstances, and where their interests are involved little reliance can be placed upon what they say. I believe these men were slow to act, and that no order was executed which produced visible change, until nearly abreast of the Battler; that when it was executed, (or attempted,) and the wheel changed, it was turned the wrong way. By no other hypothesis can her course be accounted for. It cannot justly be urged that this mistake resulted from confusion arising from peril and fright, at the time when the change should have been made.

On first blush there is something impressive in the suggestion that the tugs should not have brought their tows so near together as to render a collision possible; that with plenty of water westward the Rescue should have passed at greater distance. But it must be seen, I think, on reflection, not to be entitled to any weight. Had the collision not occurred, no one would have considered the proximity unusual. The distance was sufficient for safety. A tug is not required to sheer so far off her course as to guard against possibility of danger from negligent management of her tow. The latter is expected to follow the former, and, if there is room to allow it to pass with safety while following, by the exercise of ordinary care, this is sufficient. It is idle to speculate about the distance at which the vessels would have passed if the Grace had followed the Rescue. As before said, it is entirely clear that the disaster occurred solely because she did not. Her efforts to excuse herself by attributing faults to others, are natural; but, when it is found that her own disregard of duty in turning eastward, fully accounts for the collision, the case is at an end.

The Sagua is entitled to a decree against the Grace for the damages inflicted. The libels against the Rescue, the Battler, and the Sagua must be dismissed. A decree may be prepared accordingly.