## THE LYNDHURST et al. (two cases).

### (District Court, S. D. New York. March 14, 1899.)

1. COLLISION—TUG AND TOW—LOOKOUT.

A tug cannot be exonerated from fault for a collision in the night, where she failed to keep a lookout at the bow of the float she was towing, which projected about 100 feet beyond the tug, and it is not shown that the maintenance of such lookout would not have prevented the collision.

2. SAME—LIGHTS.

A tug, in charge of a tow consisting of a tier of canal boats, which left the tow adrift in the night for upwards of an hour without proper lights at the bow and stern of the outside boats of the tier, as required by the inspectors' rules (rule 11), promulgated under 30 Stat. 102, is in fault for a collision occurring during such time, by which the tow was injured, both on the ground of the abandonment of the tow, and of towing without proper lights on the tow.

3. SAME—LIABILITY OF TOWS.

The requirement of inspectors' rule 11 (30 Stat. 102), that "barges and canal boats when towed at a hawser, two or more abreast in one tier, shall carry a white light on the bow and a white light on the stern of each of the outside boats," imposes a duty on the tow, as well as on the tug, to see that such lights are maintained, and not only on the outside boats, but on each one in the tier, since the requirement is for the benefit of all; and for a collision resulting when such requirement is not being observed each boat injured should be held in fault.

These were libels, respectively, by John O'Brien and Edward Montgomery against the steam tugs Lyndhurst and Andrew J. White for damages for collision.

James J. Macklin, for libelants.

Cowen, Wing, Putnam & Burlingham, for defendant the Lyndhurst.

Carpenter & Park, for defendant the Andrew J. White.

BROWN, District Judge. I do not see sufficient reason for changing the former decisions in these causes.

1. I cannot relieve the tug White from responsibility for failure to have a lookout at the bow of the float which projected about 100 feet beyond the tug. The man stationed 100 feet more or less, aft on the float nearly abreast of the tug's pilot house, in order to communicate the necessary orders of navigation to the wheelsman on the tug, was the responsible person in charge of the navigation. The authorities are full of cases insisting on the necessity of a lookout, having no other duties to perform, and stationed at the proper place, namely, at or near the front. Had a lookout been so stationed, there is no reason to suppose that this tier of canal boats would not have been observed in time to avoid them, just as they were observed and avoided by the ferry boat below them. The boats were merely drifting with the tide and had no motion through the water. It was not such a night as would have prevented seeing such boats, even without a light, at a sufficient distance to avoid them. As it is impossible for the tug to show that a lookout properly stationed, and without other duties, would not have enabled the tug to have avoided the collision, she must be held in fault. The Pennsylvania, 19 Wall. 137.

2. The tow did not have the lights required by law. By rule 11

of the inspectors' rules promulgated in accordance with the new regulations of 1897 (30 Stat. 102), and approved June 7, 1897, the tow was bound to have a white light at the bow and a white light at the stern of each outside boat of the tier. There was no light at all at the bow, and the light in the cabin, if there was any, was dim. The requirements of the law were not complied with; the omission was evidently material. The tow being in charge of the Lyndhurst, it was the duty of the Lyndhurst not only to see that the proper lights were set on starting, which she did not do, but also by a proper occasional observation of the tow behind, to see that these lights were properly maintained. She was therefore responsible for towing without proper lights on the tow, as well as for the abandonment of the tow for upwards of an hour, left adrift in the stream, unattended and unwatched.

3. The requirement of inspectors' rule 11 that

"Barges and canal boats when towed at a hawser, two or more abreast, in one tier, shall carry a white light on the bow and a white light on the stern of each of the outside boats"

imposes a duty also on the tow to carry lights as specified; and this includes the duty of attention to the lights required to be exhibited so as to keep them in proper condition. In towing upon a hawser, it is not reasonable to hold that the tug alone should attend to and keep up such lights. The men in charge of the boats forming the tier should see to this, and be ready to answer any hails from the tug in that regard, without requiring the tug to stop her towing and come alongside of the tow in order to give any necessary attention to the lights during towage. The latter interpretation of the rule, would be not only an unreasonable burden upon the tug, but sometimes very embarrassing, if not dangerous. The outside boat is, therefore, in fault on this ground. The case is strictly analogous to that of The Raleigh and The Niagara, 44 Fed. 781, in which on appeal, both were held liable under rule 15 D of section 4233, Rev. St.

4. The maintenance of these lights being in the interest and for the benefit of each boat in the tier, and not for the outside boats alone, the duty of attending to these lights by whomsoever on the tow that duty may be performed, is a duty undertaken in behalf of all the adjacent boats in the tier. The rule, in form, imposes the duty upon the tier as a whole, and not on the outside boats alone. I see no reason for confining this duty to the outside boat alone, when the lights and necessary watch are for the benefit of the inside boats as well. The present case shows that all are interested in the performance of this duty. The Le Roy next inside the Drum Major was injured by the transmission of the blow of collision from the latter. One man as a watchman is probably sufficient for a tier, and the common duty should be divided and shared as the boatmen may arrange among themselves. But whoever acts should be deemed acting for all, since it is in the interest of all; and any negligence in that regard should, therefore, be treated as negligence on the part of the boat injured. Each canal boat should, therefore, recover two-thirds of her damage from the other two tugs.