THE TRANSFER NO. 14.

THE TEASER.

(Circuit Court of Appeals, Second Circuit. December 8, 1903.)

No. 42.

1. COLLISION—TUG AND MEETING TOW—INATTENTION TO LIGHTS AND SIGNALS.

A tug, with a car float on each side, passing up East river in the channel between New York and Blackwell's Island, in the early morning, *held* in fault for a collision with a barge coming down in tow on a hawser, which occurred on the New York side of the channel, on the ground that she was on the wrong side of the channel, and was negligent in failing to give proper attention to the lights and signals of the approaching vessels, or to promptly and decisively change her course to starboard as soon as they were seen coming nearly head on.

2. SAME—CONTRIBUTORY FAULT.

Under the rule that, where one vessel was primarily in fault for a collision, clear proof of contributory fault by the other is required, a tug which was passing down East river with the ebb tide at half speed, having a barge in tow on a hawser, *held* not in fault for a collision between her tow and a meeting tug having a car float on each side because she did not sooner stop and reverse, although the meeting tug failed to change her course or answer signals, where in all other respects she was properly and carefully navigated, and it appeared that, in the state of the tide, there was danger of her propeller being fouled by the hawser if she stopped, and also that the barge would be less manageable.

3. SAME—BARGE IN TOW.

A barge in tow *held* not in fault for a sheer which brought her in collision with the tow of a meeting tug, where she kept her course until after collision between the two tugs, and after her own tug had stopped, leaving her exposed to the effect of the tide.

Appeals from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a final decree of the District Court, Southern District of New York, condemning each of the tugs Teaser and Transfer No. 14 to pay one-half of libelant's damages resulting from a collision between its barge David Wallace in tow of the Teaser and a car float in tow of the Transfer No. 14 on March 25, 1901.

For opinion below, see 118 Fed. 81.

Chas. C. Burlingham, for the Teaser.

William Greenough, for the Transfer No. 14.

Le Roy S. Gove, for appellees.

Before LACOMBE, TOWNSEND, and HAZEL, Circuit Judges.

PER CURIAM. As found by the district judge:

"The barge was in tow, on a hawser of about 45 or 50 fathoms in length, of the steam tug Teaser, and bound from Newport, R. I., to Hoboken, N. J., through the channel between Blackwell's Island and New York. The Transfer No. 14, with a float on each side, was proceeding through the channel from Jersey City to Harlem. The collision happened about 5 o'clock in the morning. It was before dawn, while the vessel's lights were burning, and the navigation governed thereby. The tide was ebb, and the weather clear. * * * There is no material conflict in the testimony as to the tugs having been substantially in a head and head position to each other for some time

as they approached, and. it was the duty of each to port her helm and pass the other on the port side. The distance between Blackwell's Island and the New York shore varies from 750 to 900 feet, and, allowing a reasonable margin for navigation away from the shore, there is an average navigable channel in the vicinity of the collision, somewhere in the neighborhood of Sixty-First street, of about 600 feet. Of this space, No. 14, with her floats, occupied about 100 feet. The Teaser was about 25 feet wide, and the barge about 36 feet wide."

We agree with the district judge in the proposition that "the ascertainment of the part of the channel in which the collision took place is determinative of the question whether the tugs performed their respective duties to keep to the right," and in the finding that it took place on the New York side of the channel, and near the shore. We therefore concur in the conclusion that "No. 14 was navigating so near the New York shore that, considering the space she and her tow were occupying in the channel, a collision was imminent unless she changed her course promptly, and decidedly to the starboard when the Teaser and tow were some distance away. This she did not do, * * * and was primarily in fault for the collision."

The port corner of the port float of No. 14 came in contact with the lower guard on the port bow of the Teaser—a glancing blow, doing little damage—and thereafter the starboard stem of the barge collided with the starboard corner of the starboard float of No. 14. From this statement it is obvious that the barge sheered a considerable distance to the eastward, and it was contended on behalf of Nò. 14 that the collision was due to such sheer. Just how the sheer came about is not quite plain, but we are of the opinion that those in charge of the barge were attentive to their steering and properly managed her helm down to the very moment of collision between the tugs, and that her erratic movements were produced either by that collision, or by some sudden movements of the Teaser in endeavoring to avoid it. The failure of No. 14 to port promptly and decidedly made it necessary for the Teaser to change direction more quickly than she otherwise would, and at least to stop her engine; thus slackening the towing hawser, and rendering the barge less controllable in the ebb tide. We concur therefore with the district judge in holding libelant's barge free from fault.

The Teaser was held to have fulfilled her duty in porting, in going to the right of the channel, and as to her lights and signals. The testimony of her witnesses as to her navigation was credited by the district judge who heard them, and we see no reason why it should be discredited. She saw No. 14 and her floats when nearly a mile away. She repeatedly blew single whistles, interspersed with alarm whistles when they were not responded to either by whistle or by change of course. She ported promptly, then straightened out, then ported again, and straightened finally when quite as close to the New York shore as it was safe to go. She was condemned for not stopping and backing sooner. In The City of Augusta and The Chicago, 125 Fed. 712, we held that, where the primary fault was attributable to one vessel, clear proof of contributing negligence by the other vessel should be presented, before the latter could be held to bear an equal share of the consequent damage. The Teaser was going at half

speed, which, plus the tide, made her progress over the ground about six miles an hour, and she did not stop and back till she was in the immediate vicinity of No. 14—so close to her, indeed, that, had she been unincumbered, her failure to stop and back sooner might fairly he held to be a fault.   Her excuse for holding on was that she ex-' pected until the last moment that No. 14 would swing to starboard, in accordance with her plain duty, and that any stoppage or even slackening of speed by the Teaser would be likely to foul her propeller with the towing hawser, and would bring her tow, incapable of checking speed down on the ebb tide, into the upgoing flotilla.   It turned out that, when she finally did stop and back, the hawser did not foul her propeller; but, in our opinion, such fouling was a contingency fairly to be expected, and the action of her navigators in deciding to avoid that risk was an error in judgment under conditions of uncertainty which had been produced by the faulty navigation of No. 14. Moreover, we are by no means satisfied that this collision would have been avoided had she stopped and backed sooner.   It is quite probable that by so doing the Teaser would herself have escaped collision with the flotilla.   It was not that collision which caused the damage; but, under existing conditions, it seems to us that an earlier stoppage would have resulted only in bringing the barge down upon the port instead of the starboard car float.   We conclude that No. 14 was solely in fault for the collision.

The decree is reversed, with costs of this appeal to the Teaser against the No. 14, and cause is remanded to the District Court, with instructions to decree in favor of libelant against No. 14, with interest and costs.