THE SITKA (two cases). THE ELIZA H. STRONG. THE COMMODORE.

(District Court, W. D. New York. October 22, 1904.)

Nos. 139, 140, 142.

**1. COLLISION—STEAMER LEAVING ANCHORAGE—FAILURE TO GIVE SIGNAL.**

The steamer Sitka was one of 25 or 30 vessels anchored beside the fairway in St. Mary's river above the canal, waiting for the removal of a blockade, which prevented them from passing through. About 10 o'clock at night she moved out from among the other anchored vessels into the channel, and came into collision with the steamer Strong, which had just passed the canal with a tow, and was proceeding up the river, steering on the range light. Neither vessel saw the other approaching until they were close together, and the collision could not be avoided. *Held*, that the Sitka was in fault for not keeping an efficient lookout which would have enabled her to see the Strong sooner, and also for her failure to give the signal required by rule 4 of the pilot rules for the Great Lakes on leaving her berth, which failure cast upon her the burden of proving that the collision was directly attributable to fault of the other vessel; that the Strong was not in fault for failure to sooner see that the Sitka was in motion, her lights being among those of numerous other vessels, nor for excessive speed, which it appeared was not more than six miles an hour.

**2. SAME—STEAMER AND TOW—CONTRIBUTORY FAULT.**

The barge Commodore, which was in tow of the Strong, on a line 500 feet long, *held* chargeable with contributory fault for a collision between herself and the Sitka, a preponderance of the evidence showing that when the Sitka struck the Strong on the starboard side she rebounded, and the Commodore, instead of changing her course to port, or following the Strong, went to starboard, apparently through a mistake of the wheelsman in executing the master's order.

In Admiralty. Suits for collision.

Harvey L. Brown, for libelants Strong Transp. Co. and Kund Pederson et al.

A. J. Gilchrist and Potter & Potter, for Gilchrist Transp. Co., owner of Sitka.

HAZEL, District Judge. Two collisions in St. Mary's river, the first between the lake steamers Eliza H. Strong and Sitka, the other between the Sitka and the barge Commodore, in tow of the first-mentioned steamer, are the bases for the above-entitled actions. Libels were filed against the Sitka by the Strong Transportation Company, owner of the Eliza H. Strong, and by Kund Pederson et al., owners of the barge Commodore. The claimants of the Sitka brought the Strong into the proceeding in the latter action, and also filed an original libel in rem against both the Strong and the Commodore. By stipulation of the parties these three proceedings were heard together, the evidence in each case being the same. The collisions occurred between 10 and 11 o'clock on the night of June 10, 1902, about three miles above Sault Ste. Marie locks, on the American side of the river. The steamship Strong, 225 feet keel, drawing 12 feet 6 inches forward and 13 feet 6 inches aft, and her tow, coal and brick laden, were ascending the river on a voyage to the port of Portage, Mich. The Sitka, 272

feet keel, her draught being 17 feet 10 inches forward, and 18 feet aft, laden with 2,456 tons of iron ore, was down-bound from the port of Marquette, Mich., to the port of Toledo, Ohio. The width of the navigable water at the place of accident is about half a mile, and of the customary passageway, indicated by two range lights on the shore, about 600 feet. For a period of 21 hours prior to the disaster the Sitka, with the steamer Iron Age moored to her starboard side, was at anchor in the Point Aux Pins anchorage ground about 400 feet northward of the usual track of steamers. Both vessels were awaiting the removal of an obstruction in the American canal to enable their descent through the locks. Many other vessels, whose passage was also belated by the blockade below, were anchored in the immediate vicinity. The steamer Viking and consort were anchored about 200 feet to the north and abreast of the Sitka. Southward 100 feet astern of the Sitka, nearer and parallel to the thoroughfare, was the steamship Houghton, lashed to the starboard side of her consort, the Madiera. Directly astern of the Houghton and tow, about 500 feet distant, were the steamer Caledonia and consort. The steamship Venus was also anchored astern of the Sitka about 1,000 feet northerly of the so-called "Foote Dock Light Range." In addition to those named, within a distance of about a mile there were 25 or 30 vessels (about 10 being southward of the roadstead), all headed in the current, displaying the regulation lights, and awaiting their turn to lock through the canal. Some of the witnesses state that the fleet numbered 40 or 50. The colliding steamers were under way at the time they first observed each other. The Strong was proceeding on her course in the channel, while the Sitka, having left her anchorage and made a detour, was preparing to straighten in the roadstead. The night was dark, the weather calm and clear. No unusual atmospheric conditions interfered with sight or sound. The Strong and her tow, displaying proper lights locked through the canal up-bound, and steered west-south-west three-quarters west on the canal ranges. When in sight of the Foote Dock Range her helm was slightly starboarded, and she elected to proceed on the south side of the sailing course with open ranges on her starboard side. The evidence as to her speed is in conflict, but its clear weight is that she continued at a speed of five or six miles an hour until the danger of collision was imminent. When the Strong left the canal and entered the river, her master, who was on top of the pilot house, saw a collection of anchor lights ahead in the darkness to the northerly and southerly side of his course. These he knew were displayed by vessels delayed by the blockade. The Sitka was notified to lock through the canal at 10:30 o'clock. Prior to heaving her anchor, it had been arranged with the master of the Iron Age that he should assist her in swinging circuitously to starboard. To effectuate this intention, the Iron Age, still lashed to the Sitka, backed her engine, while the Sitka worked ahead, her wheel hard aport. As a result both vessels turned to starboard in a southerly direction and across the bow of the steamer Houghton. After completing the maneuver, the Iron Age, which had backed about 200 feet up the river, cast off the line, and the Sitka proceeded slowly ahead under a port wheel at a rate not to exceed three miles an hour. The bow of the barge Madiera, moored to the

side of the Houghton, was a trifle ahead of the stem of the Sitka. According to the master of the Sitka, he first discovered the approaching lights of the ascending steamer on looking across the port quarter of the Madiera. He testifies that after making headway about a minute he noticed the green mast and range lights of the Strong, then on the northerly side of the pathway and about abreast of the Madiera's bow. In a few seconds he saw her red light, and she appeared to be going ahead close to the Madiera's port quarter. Instantly upon perceiving the approaching steamer, the master of the Sitka blew an alarm signal of four blasts, and then gave a whistle signal to the engineer to back strong. He then put her wheel amidships. The steamboats, however, came together soon after the captain of the Sitka first discerned the lights of the ascending steamer. The Sitka's stem touched the Strong amidships. The occurrences took place so quickly that the variance in the facts as narrated by the witnesses is not surprising. The theory of the libelant exculpates itself and condemns the Sitka. From the above statement it is clear that negligence is imputable to one or both of the steamboats. Before placing the fault, however, it is necessary to understand the facts from the viewpoint of all the parties.

The respondent contends that, had the master of the Strong been vigilant, and her lookout competent, the collision could have been avoided. The libelant, moreover, is accused of not seasonably seeing the Sitka and by a proper maneuver clearing her. Capt. Strong testifies that he did not discover the Sitka until she was distant about 200 feet. Her course was at right angles with that of the ascending steamer. He immediately blew a two-blast whistle and hard astarboarded the helm. Upon receiving the danger signal, he reversed the engine. She began swinging to starboard, but, fearing a collision with an anchored vessel on the port side of the fairway, changed her course on the port helm and steadied amidships. He testifies that the steamers collided between one and two minutes from the time he discovered the Sitka. It is further claimed that the Strong, instead of swinging hard to starboard, should have swung on a hard aport helm; that she erroneously assumed that the bows of the steamers were about to collide, and accordingly starboarded when she should have ported. This point need not be expressly decided for the reason that the danger of collision was inevitable prior to the asserted error, and the proximate cause of the collision, as will be seen presently, was due to the fault of the Sitka. But, even assuming such maneuver of the helm to have been a fault, little doubt exists in the mind of the court that it was produced by the sudden peril of the situation, and, being in extremis, is excusable. Other alleged faults of the Strong will be subsequently referred to. The stem of the Sitka, as stated, struck the ascending steamer amidships. She scraped or rubbed along her side 20 or 30 feet towards the stern. Where does the fault rest? There is no general ground for much uncertainty as to the blame of the Sitka for the collision. The testimony justifies the conclusion that negligence is imputable to her for not maintaining a proper lookout and in failing to discover the Strong and consort before the situation became dangerous. It is difficult to perceive of any substantial reason why a vig-

ilant lookout could not have seasonably discovered the steamship and tow. Their lights were visible to other vessels at anchor. Richardson, wheelsman on the Viking, a witness for the Sitka, testifies that he saw the lights of the approaching vessel shortly after she left the canal. The master of the Viking states:

"I saw a tow coming up—saw the masthead light of the tow coming up— and we stopped heaving up. * * * I saw it when it was on the range from the canal coming up. * * * Must have been down the river half a mile or more when I first saw the masthead lights."

Why were the lights of the ascending tow visible to the Viking and not to the Sitka? The inquiry is pertinent. The record has been searched in vain for an item of testimony showing vigilance and watchfulness on the part of the lookout and others on board the Sitka to discover moving vessels in the fairway. The possibility that the masts and funnels of the Houghton and Madiera might have obstructed the Sitka's view has not been overlooked, but such an inference is not sufficiently clear to be persuasive. No precaution whatever appears to have been taken by the officers and crew of the Sitka to guard against interference or obstructions in her navigation by other vessels in the fairway. Her lookout testifies that he had been at his post of duty several minutes before he noticed the lights of the Strong; that he looked across the Madiera, and about 100 feet south of her saw the green and bright lights of the ascending steamer. He did not report his observations to the master of the Sitka, and 15 seconds elapsed before the approaching steamer was discovered by Capt. Clark, and the backing signal sounded. In the meantime the boat was steadily making headway towards the channel. The omission to have a vigilant and sufficient lookout in the situation here presented is a fault for which the Sitka is liable. The Ottawa, 3 Wall. 268, 18 L. Ed. 165; Chamberlain et al. v. Ward et al., 21 How. 570, 16 L. Ed. 211; The Ariadne, 13 Wall. 475, 20 L. Ed. 542. That the captain, who was on the pilot house, also failed to earlier discern the lights of the Strong is not material. It may be presumed that he was attending to other duties. That the green and bright lights of the Strong were displayed on her starboard side is not questioned, nor was the condition of the night such as to render the lights invisible. Had the watchman on the forecastle been attentive to his duties, he must have observed them. Had he timely seen and reported his observations, the collision doubtless would have been avoided. The conclusion that a competent and sufficient lookout actually employed in the discharge of his duty would have discovered the lights of the approaching tow in sufficient time to have permitted the Sitka to back or perform a maneuver in avoidance of the disaster is irresistible.

The Sitka is also to blame for not blowing a long blast of her whistle immediately after weighing anchor and clearing her berth, in compliance with rule 4 of the pilot rules of the Great Lakes, a portion of which reads as follows:

"When boats are moved from their docks or berths, and other boats are liable to pass from any direction toward them, they shall give the same signal as in case of boats meeting at a bend; but immediately after clearing the berths so as to be fully in sight they shall be governed by rule 1."

Rule 1 provides for giving a "head and head" signal, and imposes the duty on steamers to pass on the right or port side, as they shall determine by sounding proper signals. Rule 4 is believed to apply here. Had it been complied with, can any one suppose that the ascending tow would not have been sufficiently apprised of the Sitka's presence and movements, and therefore enabled to guard against danger. The record contains no explanation for this violation of a salutary provision of law to regulate proper navigation and movements of vessels leaving their berth in the locality in question. In the circumstances here presented the burden of proof is upon the Sitka to establish that the consequences which ensued from the violation of a plain duty are directly attributable to the fault of the other steamer. Spencer on Marine Collisions, § 85; The Johnson, 9 Wall. 146, 19 L. Ed. 610; The Frostburg (D. C.) 25 Fed. 451; The Transfer No. 14 (C. C. A.) 127 Fed. 305. The libeled vessel knew of the raising of the blockade, and that ships were successively ascending the St. Marys river, steering on the range light. The failure of the Strong to earlier discern the moving lights of the Sitka is explained by the fact that the vessels were anchored comparatively close together on the north side of the channel, and therefore it was undoubtedly difficult to distinguish slowly moving lights among the collection visible on the starboard side. The Daylight, 73 Fed. 878, 20 C. C. A. 81. Beyond doubt the slowness with which the Sitka and Iron Age turned to starboard tended to obscure the color lights. Hence the presence and movements of the Sitka were not discoverable by the watchman and others on the Strong. Some criticism of the conduct of the lookout on the Strong is urged by respondent, but, in the light of the circumstances it is believed that he was sufficiently vigilant and attentive to his duties. Manifestly, a compliance with the rule stated would have resulted in a complete understanding between the steamers as to the intention of the Sitka and the manner in which she desired to enter the fairway. As already stated, the course of the Strong was on the range light. Nothing apparently obstructed her movements or hindered a safe voyage through the river until the Sitka suddenly and unexpectedly emerged from the anchored fleet. The master of the Strong rightfully presumed that no vessels were approaching or interfering with his course of navigation. He was entitled to notice that the Sitka was leaving her anchorage, and, not having received such notice or having been warned of her movements, considering the close proximity of the steamboats, the fault for the collision must be primarily attributed to the Sitka. No fault is chargeable to the Strong. As indicated, her rate of speed is in conflict. It is admitted that she was going between five and six miles an hour. Her wheelsman testified that her speed was from four to five miles, the engineer five to six miles, and her captain not to exceed six miles an hour. Chilson and other witnesses for the respondent place her speed at seven and one-half to eight miles. Upon this question the estimates of those on board the tow are entitled to more weight and consideration than those of the other witnesses. The Alexander Folsom, 52 Fed. 403, 3 C. C. A. 165. The circumstances of the situation do not warrant condemning the Strong for excessive speed. She was not advancing among the anchored fleet, but was in the usual

sailing course, which was entirely open to her. The width and depth of water were ample, there were no craft passing up and down, no signals to be blown, no eddies or dangerous currents or stress of weather to render navigation difficult. The evidence in its entirety is convincing that the Sitka would not have been injured had she exercised the precaution demanded by the situation. Neither should the Strong be condemned for taking a course in close proximity to the Madiera. The evidence elicited on this point is not persuasive of the Strong's contribution to the disaster. Although witnesses for respondent testify that the distance between the Madiera and Strong was 75 to 100 feet, nevertheless, from an analysis of all the evidence, it is believed that the distance was in the neighborhood of 300 to 400 hundred feet. As between the steamers Sitka and Strong, the former alone must be held responsible for the collision.

## The Commodore.

Referring to the collision between the Sitka and the Commodore, the evidence in behalf of the latter vessel shows that the red light of the Sitka was discovered when she was projected beyond the lower cluster of anchor lights. The Commodore's lookout was attentive to his duties, and warned Capt. Pederson that there would be a collision. The captain, he testifies, quickly directed the course of the vessel to starboard, then hard astarboard. The Sitka was about 800 feet distant. The towline, which was about 500 feet long, slackened. Concededly the Commodore was 250 feet, at least, astern of the Strong when the vessels collided. Assuming the barge to have swung on a starboard helm, the effect would have been to head her two or three points to port. Accounting for the collision, the Commodore claims that the Sitka slanted across the Strong's stern and over the towline. The impressions of the watchman of the barge were that the Sitka, after striking the ascending steamer, "rebounded, slanted off, and shot fifty feet across the steamboat's stern." The Sitka was perceived by Capt. Pederson at practically the same moment when the steamboats descried each other. Apparently he had an abundance of time to execute a proper maneuver to clear the Sitka. His testimony and that of the watchman that the barge ported obedient to the starboard helm is corroborated by the crew and by the second engineer of the Strong, but such evidence is not convincing. There is so much discrepancy in the testimony as to the conduct and movements of the barge that the question of responsibility between the barge and Sitka is difficult of solution. The evident disinterestedness and impartiality of the witnesses for the Sitka who testified in this relation is, however, persuasive of the correctness of their narrative of the occurrence. The answer of the Sitka charges the barge, inter alia, with being at fault for not steering to port after being informed of the situation leading up to the collision between the steamboats. This fault, established by the proofs, contributed to the accident. Although the evidence, as indicated, is in flagrant conflict, nevertheless a preponderance thereof shows that the barge, by reason of her mismanagement, must divide the responsibility with the Sitka, whose fault has been pointed out. In impugning the management of the Commodore, the Sitka must, by a preponderance of the evidence,

overcome a favorable presumption to which the former vessel is entitled. The Oregon, 158 U. S. 186, 15 Sup. Ct. 804, 39 L. Ed. 943; American S. S. Co. v. American Steel Barge Co. et al. (C. C. A.) 129 Fed. 65. Has that presumption been overcome? In considering the proofs, the general rule that the testimony of officers and crew as to what was done on board their own vessel is entitled to greater weight than that of witnesses on other boats who form opinions from mere observations is not overlooked. The Alexander Folsom, supra; Van Etten v. Town of Westport (D. C.) 60 Fed. 579; Thames Tow Boat Co. v. Central R. Co. of New Jersey (D. C.) 61 Fed. 117. This rule, however, does not strictly apply here. True, the witnesses upon whom reliance is placed were on other boats, but their testimony relates to what was actually done and said on board the Commodore at a critical period, when her acts or omissions tended either to avoid the consequences of the Sitka's negligence or to contribute thereto. The claim that the Sitka was backing from the stem of the Strong is supported by the inferences. It is quite improbable that she proceeded from 50 to 250 feet, as claimed, across the Commodore's towline or across the Strong's stern. Capt. Clark testified that directly after the initial collision he saw the Commodore's green light abreast of the Madiera's bow. Within a few seconds he saw a red light. The testimony is supported by a number of other witnesses on board the Sitka, and would seem to sustain respondent's theory that the Commodore sheered to starboard. Stress is properly placed upon the testimony of Capt. Chilson. He stood on the pilot house of the Iron Age, in close proximity to both collisions. In relation to the Commodore collision, he testifies, in substance:

"We then saw her [the Commodore] right after the Sitka struck the Strong. Saw her green light * * * about abreast of the Houghton's quarter. * * * The Strong was a little ahead of the Houghton when she struck the Sitka. * * * Right after the collision of the Sitka and the Strong, the barge seemed to take a sheer to starboard, and I saw both his lights, both colored lights."

The witness Rossman, watchman on the Houghton, was in a position to observe the Commodore's course. He states that the barge apparently swung to starboard, and seemed to be going in between the Madiera and Sitka. Sidell, wheelsman on the Viking, testifies that the Sitka was backing just prior to the impact, and he heard some one on the Commodore shout: "Hard astarboard, hard astarboard! You have put your wheel the wrong way." Richardson, of the Viking, testifies that the barge did not follow the steamer. He also heard some one shout on the Commodore, "You have got it [the wheel] to port!" Capt. Richardson, of the same vessel, heard a similar remark. He further testifies that the Commodore was not following in the wake of the steamer, but heading directly across. The incorrect maneuver of the Commodore, namely, proceeding to starboard when she should have ported, was such a contribution to the collision that there must be an apportionment of the damages. Had she promptly proceeded to port at a time when she was comparatively out of danger, the Sitka would not have sustained additional injury. Furthermore, if she had not changed her course, nor failed to follow the Strong, it would have

been impossible to charge her with fault. The distance between her and the Sitka when the fact of the collision with the Strong became known was ample for proper maneuvers. It undoubtedly was Capt. Pederson's intention to go to port, as may well be supposed from the directions given to the wheelsman. The barge, presumptively because the wheelman misplaced her wheel, turned to starboard, and hence the collision. She was bound to use care and precaution commensurate with the situation. The America, 102 Fed. 767, 42 C. C. A. 617. No fault is attributable to the Strong for the conduct of her tow. It was not an act in extremis, and her wrong maneuver was not owing to any fault of the Sitka. Therefore, her porting her wheel when she should have starboarded it is not excusable. The Elizabeth Jones, 112 U. S. 514, 5 Sup. Ct. 468, 28 L. Ed. 812; The Sagua v. The Grace (D. C.) 42 Fed. 461. The testimony not being given orally by the witnesses for either party in the presence of the court, its verity must depend largely on inferences, the proximity of the vessels, and the situation generally.

My conclusion is that as to the collision between the Strong and Sitka the proximate cause of the collision was the fault on the part of the latter, and that such fault in and of itself was sufficient to account for the disaster. A decree may be entered in favor of the Strong Transportation Company. As to the collision between the Sitka and Commodore, owing to the concurrent negligence of the Commodore, both are condemned, and a decree may be entered for a division of the damages. The costs in both cases may be apportioned between the Sitka and Commodore. The libel filed by the Gilchrist Transportation Company against the Strong and the Commodore is dismissed. An order of reference may be made to the clerk of this court to compute the damages. So ordered.