## THE TRANSFER NO. 10.

### (District Court, S. D. New York. May 12, 1905.)

COLLISION—TUGS WITH TOWS MEETING—KEEPING TO WRONG SIDE OF CHAN-
NEL.

A transfer tug with two car floats in tow alongside *held* solely in fault for a collision between one of such floats and a meeting schooner in tow on a hawser, which took place in East river between the Bronx shore and North Brothers Island, on the ground that the tug was unnecessarily on the wrong side of the channel, and, although agreeing by signal to pass port to port, did not give the other tug and her tow sufficient room.

In Admiralty. Suit for collision.

Wing, Putnam & Burlingham, for libellant.
Henry W. Taft and Joseph H. Choate, Jr., for Transfer No. 10.
John F. Foley and Howard S. Harrington, for Director.

ADAMS, District Judge. This action was brought by the Rockland-Rockport Lime Company, the owner of the schooner Jordan L. Mott, to recover against the Transfer No. 10, the damages received by the schooner by reason of a collision with a car float in tow of that tug, on the 28th of September, 1904. The schooner was in tow, on a hawser of about 20 fathoms, of the steamtug Director, and bound east through the East river, going to Rockland, Maine, with a load of coal. The collision occurred between North Brother's Island and the Bronx shore about 7:15 o'clock P. M. Proper lights were duly exhibited by all of the vessels. The tide was flood, about 2 miles in strength. The schooner was using her helm but had no sails set. There was no wind to affect the vessels. The Director was brought in by petition. At the end of the trial, a fault of not following the Director, was alleged by No. 10 against the schooner and an amendment allowed raising that question.

The floats of the Transfer were going from New York to the claimant's float bridges at Oak Bluff, New York. Finding them occupied when she arrived, the tug moved down the river to the mooring crib, which lies on the Bronx side of the channel, a few hundred feet below the bridges, to await an opportunity for the floats to get in to the bridges to unload. There she found two other transfer tugs, No. 14 and No. 17, each also with two floats in tow, awaiting an opportunity to get to the bridges. No. 10 tied up outside of them. All lay heading down the river. Shortly afterwards No. 14, which was nearest to the shore, was called to the bridges. She was obliged to go out far enough to clear the bridge racks and then drop back with the tide. This involved the other tugs and floats also going out and while they were executing the manœuvre, the collision occurred by the forward port corner of the port float of No. 10 striking the port side of the schooner about 30 feet from her bow, doing considerable damage. The schooner was 85 feet long.

The Director and No. 10 saw each other when they were about one-fourth of a mile apart and exchanged a signal of one whistle, which was shortly afterwards repeated. There is no dispute between the parties save as to the point of collision with respect to

the shores, the schooner and the Director contending that it was as near North Brother's Island as it was safe for them to go, and the Transfer that there was ample room for the Director and tow to navigate in. The space between the buoy and Oak Bluff is about 800 feet.

It is not seriously disputed by No. 10 that she was well over to the shore of North Brother's Island. Her pilot says that her port float was within about 200 feet of the southern side of the channel, so that there was that much navigable water left for use by other boats, but it appears that he considered the channel 900 or 1,000 feet wide there when it was actually 800, and his estimate of the distance of 200 feet may be reduced. The 3 transfers, with their 6 floats, were probably between 300 and 400 feet wide. Concededly they had to go out 150 feet from the end of the pier at which they were lying in order that No. 14 might get properly to the bridges and in this way they occupied a large part of the channel, so that a space of 200 feet was rather a large estimate. It is testified by those on the tug and tow that they went as much to the southward of the channel as was prudent but nevertheless the collision took place as above described. The facts in the case and the question of fault have been fully and elaborately argued but there does not seem to be very much to say about it. The Transfer was obviously in fault for being on the wrong side of the channel and her signals indicated that she would give the tug and tow the room they were entitled to. They kept well, if not closely, to their side of the channel and in view of the rights of the vessels and of the agreement between the tugs, I see no other conclusion to arrive at than that No. 10 should be held for the damages.

In some respects the case resembles that of The Teaser (D. C.) 118 Fed. 81. There a vessel was being towed on a hawser through the East river between Blackwells Island and New York. Transfer No. 14 was towing some floats there and held primarily responsible for the collision, but the damages were divided because it seemed that the other tug did not observe the proper precautions with respect to stopping when it became apparent that the Transfer was not fulfilling her duty to keep away from the port side of the channel. The decision was reversed on appeal with respect to the division (127 Fed. 305, 62 C. C. A. 223) because the tug being encumbered with a tow astern, it was held she was entitled to hold on to the last minute. The case is quite in point here with respect to the duty of the navigating vessels to keep to their own sides of the channel.

It is contended here that the No. 10 could not go to her starboard on account of the presence of the other transfers inside of her, but if that was the situation, it does not seem that it helps her because she must abide by the result of being forced into an improper position by the other transfers, which have not been brought into the action, perhaps for the reason that they have the same owner. But, in any event, it does not appear that such an excuse can prevail here, because at the time of collision, the others were out of her way and there was ample room for No. 10 to go down or

back up the river. Either would doubtless have been inconvenient but that contention can not be received to relieve her from a wrong. I do not consider that fault has been established against either the Director or the schooner.

Decree for the libellant against No. 10, with an order of reference. The petition against the Director is dismissed.