### THE H. B. RAWSON.

### THE PRINZ ADALBERT.

(Circuit Court of Appeals, Second Circuit. May 22, 1908.)

No. 245.

1. COLLISION—STEAMER AND MEETING TOW—NEGLIGENT NAVIGATION IN PORT.
   Conflicting evidence considered, and *held* to show that a collision in the evening between a steamship coming in from the sea to her dock at Hoboken and the second of two scows in tow of a tug on a line, passing down the river, was due to the fault of all four of the vessels; the steamship and the tug in navigating without proper lookouts or giving proper attention to other vessels, in consequence of which neither saw the other in time to give her a safe passage, and the scows in carrying but one light each, in violation of rule 11 of the harbor inspectors, which required each to carry two lights.

2. ADMIRALTY — EVIDENCE — JUDICIAL NOTICE — INSPECTORS' RULES IN ADMIRALTY.
   While a court of admiralty does not take judicial notice of the rules of the supervising inspectors, yet it may properly consider the same, although not formally introduced in evidence, where they appear in the record, were referred to in the testimony, and are discussed in the briefs of counsel.

Appeal from the District Court of the United States for the Southern District of New York.

For opinion of the court below, see 152 Fed. 1001.

J. W. Griffin and Wheeler, Cortes & Haight, for appellant.

Wing, Putnam & Burlingham (James Forrester, of counsel), for appellee The Rawson.

Carpenter, Park & Symmers, for appellee Bouker Contracting Co.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. September 5, 1905, some time after sunset, the steamship Prinz Adalbert of the Hamburg-American Line, bound in from sea to her pier at Hoboken, came into collision with the scow Orleans, which was the second scow towing tandem after the tug H. B. Rawson, and sank her. The tide was ebb, and the Rawson was bound from Canal street, New York, to Barren Island, on the south side of Long Island. This libel was filed by the owners of the Orleans against the steamship and the tug. The testimony is in remarkable conflict, even as to the place of collision. The pilot of the steamship says it was between Piers 4 and 8, one-third of the way across from the New York piers. The master of the tug says it was half a mile further down, at the second anchorage buoy below Communipaw. The master of the tug Bouchard, which was standing by in the neighborhood, and

Kruse, an employé of the Hamburg-American Line, who was on board, say that it took place at or near the first anchorage buoy, and this we find to be the fact.

It is admitted that the scows, which were both owned by the libelant, were towing on a hawser one behind the other, and that each carried a white light at the stern on a pole. By inspectors' rule 11 each was required to carry two lights, one at the bow and one at the stern. As we cannot say that this did not contribute to the collision, the libelant must be held at fault. The Lyndhurst (D. C.) 92 Fed. 681; The Nettie L. Tice (D. C.) 110 Fed. 461. The libelant contends that this fault is negligible, because the steamship admits she saw the tug's towing lights, and therefore knew that a tow must be following her. But the lights on a tow are intended to show where the tow is, and we think that four lights might have been seen by those on the steamship, even if they were not vigilant enough to see two. It is further contended that this fault cannot be considered, because the court does not take notice of the inspectors' rules and they were not offered in evidence. The Clara, 55 Fed. 1021, 5 C. C. A. 390, is cited, in which the court said:

"The rules of the supervising inspectors do not seem to have been introduced in evidence. They are not in the record, nor are there any statements in the briefs of counsel which can be taken as admitting the existence of any particular rule. According to the doctrine of The E. A. Packer, 140 U. S. 360, 11 Sup. Ct. 794, 35 L. Ed. 453, we cannot take notice of them. In that case the court said: 'No such rule is incorporated in the record or in the briefs, and it is not a regulation of which we can take judicial notice.' We must, therefore, in disposing of the case, disregard any alleged faults based upon the violation of such rules."

But in this case the rule is referred to in the record and exactly stated in the examination of Lyons, a witness on behalf of the libelant, and is fully considered in some of the briefs, so that we think we are authorized to consider it:

"Q. Is it customary in the port of New York, when you have two scows fastened together, to have four lights up, or two?

"Mr. Griffin: Objected to. I think the rule speaks for itself. It says two on each scow. All scows without rudders must carry two lights.

"The Court: How is the custom going to affect it?

"Mr. Forrester: Two scows fastened together are treated as one boat.

"The Court: I will take the testimony.

"Mr. Griffin excepts.

"A. Two."

The account of the navigation given by the tug is incredible. The master says that when on the Jersey side of the river, about abreast of the Jersey Central ferry, he saw dead ahead the green light of the Prinz Adalbert, at which time he was showing her his green light. He put the tug heading across the river to the southeastward, and says the steamship was heading into the Jersey flats as if going to anchorage. The tug then blew two whistles, to which there was no answer, when the steamship suddenly showed her red light, whereupon the tug blew one whistle and an alarm, and ported four points. The steamship, always showing her red light, followed him right around until she struck the tow.

Coming, now, to the steamship, there was a lookout in the crow's nest on the foremast, but none on the forecastlehead. The first officer, who, by the practice of the Line, should have been on the forecastlehead, had gone away ten minutes before the collision. The only person forward was the carpenter, at the capstan standing by the anchor, who neither heard nor saw anything until the collision happened. The pilot, who was on the bridge, 150 feet abaft the stem, thinks there was a lookout on the forecastlehead, but is not sure whether he reported the Rawson's lights, and naively testifies that the lookouts "sing out sometimes and you have to stop them; they annoy you if they report every light they see." He saw only the towing lights on the starboard bow and looked for no others. The master and third officer, who were also on the bridge, saw the Rawson's red light a little on the starboard bow. The Prinz Adalbert blew one whistle, stopped, and reversed, and, when her way was almost off, either struck the scows or they were carried across her bow by the ebb tide. The scows were not discovered until the actual collision. We think that the tug and tow were meeting the steamship a little on her starboard bow, and that neither vessel saw the other in time to give her a safe berth. The tug was not able to pull her tow across the steamship's bow, and the steamship did not see the tow at all. Both vessels were at fault.

The district judge exonerated the tug upon the strength of The Teaser, 127 Fed. 305, 62 C. C. A. 223. We think that case quite different. In it the vessels were meeting in the narrow channel between Blackwell's Island and New York. The tug Teaser, which was exonerated, was towing a barge astern on a hawser in the ebb tide. She had discovered the Transfer approaching head and head nearly a mile away, had ported to the New York shore as far as she could safely go, and had repeatedly blown signals of one blast interspersed with alarm signals. But the Transfer neither answered nor ported, so as to go over to the Blackwell's Island side of the channel. The district judge held the Teaser at fault for not stopping and backing; but we thought the danger of fouling her propeller with her hawser was a sufficient excuse, in view of the controlling fault of the Transfer in not keeping to her own side of the channel. If in this case the Rawson had seasonably signaled the Prinz Adalbert, and had by her been crowded in a narrow channel, where she could go no further, we would exonerate her; but this was not the case, and the account she gives of the navigation of both vessels is so incredible that we conclude that those on board of her were as little vigilant as those on board the steamship.

Both scows being at fault, and both being owned by the libelant, whether the damages should be divided between the tug, the steamship, and the scow, or between the tug, the steamship and scow, and the other scow, or whether the libelant should stand one half the damages and the other half be divided between the tug and the steamship, or between the tug, the steamship, and the other scow, is in the present state of the law uncertain. The Lyndhurst (D. C.) 92 Fed. 681; The Nettie L. Tice (D. C.) 110 Fed. 461; The Komuk (D. C.) 120 Fed. 841; The Eugene F. Moran (D. C.) 143 Fed. 187; Id., 154 Fed. 41, 83 C. C. A. 153.

The decree is reversed, with costs of this court to the claimant of the Prinz Adalbert, and remanded, with instructions to enter a decree in favor of the libelant in accordance with the answer of the Supreme Court to the question certified in the case of The Eugene F. Moran, 154 Fed. 41, 83 C. C. A. 153, when it is handed down, and a reference to ascertain the damages.