## THE HENRY W. CARD.

## THE SUSQUEHANNA.
### Nos. 12197, 12159.

District Court, E. D. New York.
April 2, 1934.

Foley & Martin, of New York City (by J. A. Martin, of New York City), for Virginia Towing Co.

Frank H. Cooper, of New York City (by Mr. Stewart), for O'Brien Bros., Inc.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and A. Howard Neely, both of New York City, of counsel), for Gulf Refining Co.

CAMPBELL, District Judge.

On stipulation, the above-entitled petition for limitation of liability and suit were consolidated for the purpose of trial.

The above-entitled suit is brought by O'Brien Bros., Inc., against the barge Susquehanna, Gulf Refining Company, and steam tug Henry W. Card, to recover damages caused by the coming violently into contact of the barge Susquehanna, while in tow of the steam tug Henry W. Card, with sand scows of said libelant O'Brien Bros., Inc., and injuring the same.

The above-entitled petition for limitation of liability of the Virginia Towing Company, owner of the steam tug Henry W. Card, is filed for the purpose of securing exoneration from all liability with reference to the collision aforesaid, or limitation of liability for the same if the tug be at fault in any degree.

In that proceeding claims were filed by the Gulf Refining Company and O'Brien Bros., Inc.

O'Brien Bros., Inc., also instituted suit against the tug Henry W. Card and the barge Susquehanna, but, as against the Card, that suit is stayed by the limitation proceeding.

A suit was also instituted by Gulf Refining Company against the tug Henry W. Card, to recover for the damages to the Susquehanna, but that suit is likewise stayed.

Ownership of all vessels and incorporation of all parties, as alleged in the pleadings

in said Limitation of Liability and said suit, was stipulated.

This court has, and it is admitted that it has, jurisdiction.

The tug Henry W. Card was in all respects seaworthy, properly manned, equipped, and supplied, and the owner had used due diligence to make her so.

No officer of the owner was on board.

Early on the morning of November 7, 1930, the barge Susquehanna, 254 feet long, owned by the Gulf Refining Company, finished loading a cargo of about 15,000 barrels of fuel oil at Bayonne, N. J.; her draft then being 13 feet forward and 16 feet 6 inches aft.

Thereafter she was towed by another tug to an anchorage off Robbins Reef.

She was then taken in tow by the steam tug Henry W. Card, on the tug's port side.

The tug and tow then proceeded on the usual courses through the Upper Bay and East River, passing Throgg's Neck and into Long Island Sound, bound for Providence.

The weather was clear, tide last of the flood, and wind light southwest.

Shortly after passing Throgg's Neck, the tug stopped, let the Susquehanna go from her port side, and passed her a hawser so that the barge could be towed astern.

The hawser was made fast to the Susquehanna's bow, and the Card then proceeded ahead while paying out the hawser, and, when it had nearly paid out 185 fathoms, the Card slowed down, and, after picking up the hawser, which had been paid out to 185 fathoms, the Card hooked up and proceeded full speed ahead.

The tugs Thomas F. O'Brien and O'Brien Boys, alongside of each other, with eight loaded sand scows and one derrick in tow in tiers of two boats each, there being three boats in one tier, were approaching from the opposite direction on a course to pass the Card and her tow starboard to starboard, about 600 feet off.

No passing signals were given and none were required.

The Card proceeded at good speed, greater than that of the tugs Thomas F. O'Brien and O'Brien Boys and the tugs Margaret Meseck and Bouker No. 7.

The Card passed the O'Brien tow about 600 feet off.

Johansen, a deck hand of the Susquehanna, was at the wheel, and the master of the Susquehanna says he was alongside, with his hand on the wheel. Johansen was an old sailing vessel man, and this was the first time he had steered the Susquehanna.

The towing hawser having been paid out, the Susquehanna's master ported her helm to straighten up behind the tug, and the Susquehanna followed directly behind the tug Card for a short time. The Susquehanna thereafter took a sheer to port, and her helm was immediately ported and the sheer broken.

Her helm was then put amidships, and the Card was about two points on the starboard bow of the Susquehanna. As the Susquehanna was approaching the O'Brien tugs, she took a sheer to starboard, and the master of the Susquehanna says her helm was put hard astarboard, but she continued to sheer.

The Thomas F. O'Brien and the Card both sounded danger signals. The Card tried to snap the Susquehanna out of her sheer, and then continued on hooked up. The O'Brien tugs continued on hooked up.

The sheer of the Susquehanna was not checked, and she struck a glancing blow on the starboard side near the stern of the Welfare, the starboard hawser boat of the O'Brien tow, and shoved that tier over, then went right through the bow of the Highland Light, the next boat on the starboard side of the O'Brien tow, and that broke the lines on the other tier, and the Susquehanna kept right on going over, and anchored about 300 feet beyond the port side of the O'Brien tow. The O'Brien tow was all broken up, and four boats were turned over, dumping their loads of sand.

The boats of the O'Brien tow and the barge Susquehanna were damaged.

This occurred at 9:10 o'clock p. m., and the O'Brien tow had not quite reached Stepping Stones.

The Thomas F. O'Brien, O'Brien Boys, and the Meseck tug picked up the boats, and they were towed to the stake boat off Riker's Island.

The contention on behalf of the Susquehanna and Gulf Refining Company that the Card was not towing with sufficient speed was not sustained. The Card with her tow alongside had passed the Meseck and Bouker No. 7, which were towing the same tow bound out from New York, at Whitestone, and had gained a lead of over a quarter of a mile, which was reduced to about one-eighth of a mile while the Card was letting her tow go from alongside and was taking her on a hawser, but those in charge of both of those tugs say that the Card, after she had paid out all of her hawser and hooked up, was making great-

er speed than they were making, and those in charge of the O'Brien tugs say that the Card was making much greater speed than their tugs. And the fact that the Card was making sufficient speed for the proper navigation of the Susquehanna is conclusively shown by the fact that the Susquehanna was able, by the use of her rudder, when the hawser was all paid out, to straighten up behind the Card and break the sheer which the Susquehanna took to port.

The Susquehanna, which had no motive power of her own, had such headway that she was not stopped by striking the O'Brien tow, but went through it, and, had she not anchored 300 feet from the port side of the O'Brien tow, would in all probability have run ashore. The speed of the Card was between 6 and 7 miles per hour when the Susquehanna took her sheer.

The contention of the Gulf Refining Company that the Card did nothing to break the sheer is not sustained.

From all the evidence it seems clear to me that the sheer could only be broken by the rudder of the Susquehanna, and that the sheer, once taken, could not be broken by any maneuver of the Card, but, unless the barge responded to her rudder, she would have run until she ran off her headway.

However, the master of the Card did, when confronted with the sudden emergency, maneuver his tug in what he in his best judgment as a master mariner considered was the best way to assist the barge in breaking the sheer.

■ It is true that the Card was towing the Susquehanna on a hawser in excess of 75 fathoms in length, to wit, 185 fathoms, in violation of the regulations for tows in inland waters, but that fact standing alone does not impose liability. Such a violation, to impose liability, must have been a contributing cause.

It was clearly shown by the evidence in this case that a boat on a long hawser steers better than one on a short hawser, and a long hawser helps to keep the following boat behind the tug, due to the fact that the bight of the hawser is down in the water. (Pool Shipping Co., Ltd. v. Moran Towing & Transportation Co.) The West Wauneke (C. C. A.) 65 F.(2d) 385, 1933 A. M. C. 836.

■ The contention of the Gulf Refining Company, that, if the hawser was only 70 or 75 fathoms long, the Susquehanna would not have sheered so far, is not sustained. The sheer could only have been broken by the rudder of the barge, and the sole and primary cause of the accident was the sheer. With the

Susquehanna traveling at the speed shown, she would in all probability either have pulled the tug with her or caused the hawser to part.

The cause of the sheer taken by the Susquehanna seems to me to have been occasioned by her steering, and only by such steering. Johansen, the deck hand of the Susquehanna, was an old sailing boatman and was steering the barge for the first time. The wheel of the barge was rigged the opposite of wheels on sailing vessels. The master had no trouble in breaking the sheer to port while he had the wheel, but we have a different story when Johansen has the wheel, and this is true notwithstanding the contention of the master of the barge that he was alongside and had his hand on the wheel. By his own testimony taken before the local inspectors, which was offered in evidence on this trial, it seems clear to me that Johansen, in attempting to break the sheer to starboard, maneuvered his wheel in the way which would have been proper with a sailing vessel, with which he was familiar, and the opposite of the way in which he should have maneuvered the wheel of the Susquehanna to break her sheer. The testimony of Johansen that he stopped the swinging of the barge and got her steady just about, or just before, she struck the O'Brien tow, convinces me that, when the master of the barge started aft to look at the quadrant, Johansen observed his error in having ported his wheel, and put his wheel to starboard, which accounts for the master of the Susquehanna finding the quadrant over to starboard, which would put the rudder to port. For the man steering a boat in confusion to roll the wheel the wrong way is not unusual. The Sitka (D. C.) 132 F. 861.

■ The tug did not cause the sheer, the tug was not an insurer of the safety of her tow, and the burden of proving the negligence of the tug rested on the tow. Pool Shipping Co., Ltd. v. Moran Towing & Transportation Co., supra.

■ On behalf of the Gulf Refining Company there are cited cases decided by this and other courts holding the tugs liable for allowing the tails of their tows to swing, and that is undoubtedly the law, but those cases related to tows which were not steered with their own wheels, and they are not in point. It was the duty of the tow to follow the tug. The Henry O. Barrett (D. C.) 156 F. 417.

■ The sheer of the Susquehanna was not unavoidable, but one that was caused by her bad steering.

The Susquehanna was solely at fault. The petitioner Virginia Towing Company is en-

titled to a decree exonerating her from all fault and damages. The libelant O'Brien Bros., Inc., is entitled to a decree against the barge Susquehanna and Gulf Refining Company, with costs and the usual order of reference.

Decrees may be entered in accordance with this opinion. Settle decree on notice.

If this opinion is not considered a sufficient compliance with rule 46½ of the Rules in Admiralty (28 USCA § 723), proposed findings of fact and conclusions of law in accordance with this opinion may be submitted for the assistance of the court, as provided by the rules of this court.