THE ALBERT N. HUGHES.

THE LOTTIE K. FRIEND.

(Circuit Court of Appeals, Third Circuit. January 25, 1899.)

No. 23.

COLLISION—TUG AND TOW—NEGLIGENCE OF THE TOW—PRESUMPTION.

Where a tug, having a heavy schooner in tow, safely passed a schooner lying at anchor at a distance of at least 55 feet, and the officers of the tow admitted that none of them saw the anchored schooner until they were "right into her," it will be presumed that the collision was the result of the negligence of the tow, and the tug will not be liable therefor.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

John F. Lewis, for appellant.
Henry R. Edmunds, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and KIRKPATRICK, District Judge.

KIRKPATRICK, District Judge. The tug Albert N. Hughes, with the schooner Lawrence in tow on an 85-fathom hawser, was proceeding down the Delaware Bay on the evening of September 21, 1895, when the schooner Lawrence came in collision with the schooner Lottie K. Friend, riding at anchor. The Lottie K. Friend had her lights burning at the time, and is admittedly faultless. The only question presented to the court is whether the tug Hughes is responsible, for she alone has been libeled. The record shows that it was early in the morning, as the tug and tow were proceeding down the bay about in the regular ship channel to the west of Ship John light, on the prescribed course of S. E. by S. ½ S., that the mate who was in charge of the tug sighted the red and white lights of a small schooner getting under way, and the white riding lights of two vessels at anchor, all being about straight ahead. The two small schooners were near together, about in mid-channel; and the other vessel, showing the white anchor light, and the one furthest away from the tug, was the Lottie K. Friend. She was lying to westward of mid-channel, and about a quarter of a mile to the southward of the other vessels. For the tug to have held her course would have resulted in a collision with the nearest vessels, so that, as was his duty, the mate of the tug blew one whistle, ported his helm, and went to the westward side of the channel. That the tug blew one blast of the whistle at this time is testified to by the master, the mate, and the assistant engineer of the tug, and by David Martz, the keeper of the Ship John light; and Calmin, the anchor watch on the schooner Friend, admits having heard a whistle at this time, presumably that of the tug. This whistle was a signal to the vessel getting under way, as well as to the tow Lawrence, that it was the intention of the tug to pass to the westward of the two small schooners. As a fact, both tug and tow did so pass them safely, and at a considerable distance. A quarter of a mile away lay the Friend at anchor, a little to the westward of mid-channel, and on the port bow of the tug. The testimony produced by the libelants tends to show that the tug approached the Friend almost head on, or perhaps on a course to the eastward, and that, unexpectedly discovering the situation, she turned suddenly to the westward, and passed from starboard to port, directly across the bows of the Friend, and distant about 45 feet away; that the tow, up to this time, had been following the tug, but was unable to make the sudden change of course necessary to cross the bow of the Friend; and that, as a result, the tow struck the Friend on the starboard side between the fore and main rigging abreast the main hatch. The version of what took place is contra-

dicted by the testimony of the captain of the tow Lawrence and the men at her helm, all of whom were called on the part of libelants, and say that there was not any such sudden or abrupt change of course on the part of the tug as would be involved in such a maneuver; and also by the captain and mate and assistant engineer of the tug Hughes. These latter testify that the course of the Hughes was changed at the time of the blowing of the one whistle (which was before the little schooners were passed) from S. E. by S. $\frac{1}{2}$ E. to S. by W., and that the Hughes continued going gradually to the westward on that course until the time the tow collided with the Friend. It is apparent from a consideration of the relative situation of the vessels at the time the schooners were first sighted by the tug Hughes (as shown on the annexed diagram) that this was the natural

Sch. Lawrence.

Original Course Tug and Schooner
S. E. by S. ½ S.

Tug's change of course:
From S. E. by S. ½ S. to S. by W.
3½ points=39⅜° to the W.

Tug Hughes.

Schooner's change of course:
From S. E. by S. ½ S. to S. E. ½ E.,
5½ points to the E. of the tug!
2 points=22½° more to the E. or
port, than original course!

S. E. by E. ½ E.

Two Little
Schooners.

Sch. Sarah W. Lawrence,
Heading S. E. ½ E. at collision.

Sch. Lottie K. Friend, anchored.

Tug Hughes
Heading S. by W.

and proper thing for the tug to do, and that, if it had been done by both the tug and tow, no collision would have occurred. To enable them to clear the Friend, nothing was required but to hold the course made necessary to avoid the small schooners. The pathway to the westward was free, and water was plenty. The same conditions pre-

vailed to the eastward of the Friend. The tide was on the ebb, and at this point setting to the southeasterly. If the tug were approaching the Friend nearly head on, and danger of collision seemed imminent, it seems to us that she would have attempted to take advantage of the set of the tide to pass the Friend to the eastward, rather than have tried to pull the heavily laden schooner across the bow of the Friend against its influence.

In The Sagua, 42 Fed. 461, the court says that, "when a collision occurs between a vessel in tow and a third vessel, which the tug has passed in safety, the presumption of fault is against the tow"; and this court has held, in The Invertrossachs, 8 C. C. A. 87, 59 Fed. 194, that in such cases "the burden of proof is upon the petitioner to establish the tug's alleged negligence." In the case at bar the master and lookout and helmsman of the Lawrence had her in charge. Their duty was to exercise reasonable care, prudence, and skill to avoid collision; yet, according to their own evidence, not one of them saw the Friend until they were "right into her." They say they were, as in duty bound, following the tug, yet the tug, continuing her course, without, as they admit, sudden change, cleared the Friend to the westward by at least 55 feet on a course S. by W., while the Lawrence struck the Friend on the eastward side while upon a course S. E. ½ E. Whether the cause of the collision was, as has been suggested on the argument, that the persons in charge of the tow Lawrence mistook the anchor light of the Friend, which they say they did not see,—though it must have been in plain view,—for the lights on the tug, by which they should have directed their course, must be a mere matter of conjecture. Certain it is from their own account that they thought the tug directly ahead of them up to the time of the collision, when in fact she was far to the westward. Upon a consideration of the whole evidence, we are of the opinion that the cause of the collision was not in any way attributable to the fault or neglect on the part of the tug Hughes. The decree of the district court (79 Fed. 383), should be reversed, and the record remitted, with directions to dismiss the libel, with costs.