### THE HENRY O. BARRETT.

### THE JAMES McCAULEY.

(District Court, E. D. Pennsylvania. October 17, 1907.)

### Nos. 21, 24.

**1. COLLISION—TOW AND ANCHORED VESSEL—FAULT AS BETWEEN TUG AND TOW.**

Where a tug passed an anchored vessel at a safe distance, while her tow came into collision with it, the burden rests on the tow to establish alleged negligence on the part of the tug; it being her duty to follow the tug and conform to her movements, so long as they do not lead into danger.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, § 83.]

**2. SAME—FAILURE OF TOW TO FOLLOW TUG.**

A dredge, engaged in dredging a new channel in the Delaware river, was anchored at night on the easterly side of such channel, carrying proper lights indicating that vessels should pass to the eastward of her through the old channel, which was still in use and marked by lights. A tug, with a large schooner in tow on a hawser 480 feet long, was passing down the river, and, seeing the lights of the dredge, turned to the eastward when half a mile above, and the tow failing to follow endeavored to attract her attention by her whistle. The tug passed the dredge at a safe distance, and the tow failing to follow turned almost directly to the eastward, but the tow kept nearly straight ahead and struck the dredge, in-

156 F.—27

juring her and one of the men on board, and drowning another. *Held*, that the schooner was solely in fault in failing to pay proper attention to her course and to follow the tug, there being a sufficient depth of water in the old channel.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, § 78.]

In Admiralty. Suit for collision. On final hearing.

Henry R. Edmunds and Theodore M. Etting, for American Dredging Co.

Curtis Tilton and Edward F. Pugh, for the Henry O. Barrett.

John F. Lewis and Francis C. Adler, for the James McCauley.

HOLLAND, District Judge. This is a collision between the schooner Henry O. Barrett, while in tow of the tug James McCauley, and the dredge Columbia, which was anchored in the neighborhood of Dan Baker Shoals in the Delaware river, where she was at work in the daytime under contract with the government of the United States for dredging a new channel. It occurred in the early morning of April 2, 1903, at half past 4 o'clock. The schooner, a large coasting vessel, drawing upward of 24 feet of water, started from Philadelphia for Boston with a cargo of coal, and at the time of the accident the tug and the tow were bound down the river to the Capes. The tug was towing the schooner astern upon a hawser about 80 fathoms long. The night was dark, but lights were plainly visible. Both the tug and the tow had the required lights burning, and were proceeding at the usual rate of speed. At a point above Reedy Island Flats, commonly known as "Dan Baker Shoals," those on the schooner and tug saw a bunch of red lights and white lights about two miles away, toward which the tug directed her course. These lights subsequently proved to be on the Columbia. The red lights were so placed with reference to the white lights as to indicate that vessels should pass her on her port side, which was to the eastward. As the tug and the tow approached the dredge, the tug, at a distance probably of half a mile (at any rate at sufficient distance to enable the schooner to follow), steered to the eastward; but those in charge of the schooner failed to follow. The tug thereupon blew several blasts upon her whistle to attract the tow's attention. The tow failed, however, to follow, and the tug at once put her helm to starboard in an effort to pull the tow to the eastward, and the whistle was again blown. The tug by this time had gradually swung well over to the eastward and in a position plainly visible to those on the schooner; but the latter still failed to follow, and the helm of the tug was swung full to starboard and danger whistles were blown. The schooner had been pointing directly for the middle of the stern of the dredge, and the tug, almost at right angles, at the end of a hawser 480 feet long, was pulling her eastward. The result was that the efforts of the tug, together with whatever aid was given by the wheel of the schooner, were only sufficient to change the course of the schooner so as to make the blow a glancing one; the starboard bow of the schooner striking the upper port corner of the dredge, scraping along her side, doing some damage to both schooner and dredge, injuring Luka Bachich, and drowning one Albert E. Johansen, both deck hands on the dredge. The towing hawser was parted by the

collision, and the tug passed the dredge to the eastward by an ample margin of safety and in a position at the time of the collision nearly at right angles to the schooner and a full length of the hawser away from the dredge. The tug was pointing across the river toward the Jersey side. The dredge was anchored on the eastern side of the new channel, at or near a point where that edge of the new channel was intersected by the Reedy Island lights. To the eastward of her anchor was the old channel, which was well defined and properly lighted, with a width of from 400 to 600 feet, and having a minimum depth of 26 feet or thereabouts. The new channel lay to the westward of the dredge, which was 600 feet wide and about 30 feet deep at mean low water, had been substantially completed, and new range lights established; the old lights still being left in place. After the practical completion of the channel the government determined to cut away a corner at a place where there was a slight bend, and it was here that the dredge was engaged at the time of the collision. The old channel to the eastward was being used at the time of the collision by vessels of deep draft coming up and going down the river.

The dredge filed this libel against the schooner alone, and the latter made the tug a party co-respondent to this libel under the fifty-ninth rule in admiralty (No. 21 of 1903), and, in addition, has libeled both dredge and tug (No. 24 of 1903). A libel has been filed in behalf of the injured deck hand, Luka Bachich, Jr. (No. 19 of 1903), against the schooner, dredge, and tug. A libel has also been filed in behalf of Albert E. Johansen, the seaman who was drowned, against the owners of the tug in personam, and another libel in the same interest against the owners of the dredge in rem.

As it was the schooner that struck the dredge, while the tug passed at a safe distance, the burden of proof is upon the schooner and the other parties alleging it to establish the tug's alleged negligence in approaching the dredge. Invertrossachs v. The McCauley, 39 Fed. 194, 8 C. C. A. 87. Presumption of fault is against the tow. The Albert N. Hughes, 92 Fed. 525, 34 C. C. A. 516. So long as the tug is not going into danger, the tow is in duty bound to follow the course of the tug and conform to her movements. The Thomas Wilson (D. C.) 124 Fed. 649. The United States regulations required dredges in the Delaware river to have in view one white light and four red lights; the latter to be displayed on the side on which it is desired that vessels should pass. The evidence shows that the dredge upon the night of the collision had observed these requirements, with the possible exception that, instead of having one white light, two were used. The four red lights, however, were properly located to indicate to the tug and the tow that it was their duty to pass the dredge to the eastward, and there is nothing to show that either the tug or the tow was in any manner whatever deceived by the additional white light; but, on the other hand, it is shown that the officers on both the tug and the schooner understood the meaning of the lights as they appeared.

We further find that there was sufficient depth of water in the old channel for the schooner to pass down that side, and from the evidence there can be no other conclusion than that the officers in charge at the time were not paying the proper attention to the management of

the tow. The schooner was pointed for the middle of the stern in at least 30 feet of water, and if the man at the wheel had given any assistance in steering to the eastward of the dredge, with the tug pulling her in that direction until the latter was almost at right angles to the schooner, it is not at all probable that the collision would have occurred. The allegation that the tug was at fault because an inexperienced man, without a license, was at the wheel, is not established. The master was on deck, and there was nothing in the action of the tug which contributed to the accident; but, on the contrary, she made an effort to prevent it, and would no doubt have been successful, if the tow had observed the same care. Nor do we think that the claim of the schooner was the tug's failure to lay up above Reedy Island for high tide was negligence, because at the time of the accident there was sufficient depth of water for the schooner to pass down by the dredge, if the proper care had been observed. We think, for these reasons, that the schooner is entirely at fault and liable for the injury resulting from the collision.

A decree is therefore entered in favor of the libelant and against the schooner Henry O. Barrett alone.