## THE GALLIA.

(District Court, S. D. New York. March 14, 1910.)

**1. COLLISION (§ 71*)—LIABILITY—STEAMSHIP BEING MOVED BY TUGS.**

Where a steamship, at the time she came into collision with another vessel lying at a pier, was without steam and was being moved from one side of another pier to the other by tugs employed for the purpose, the movement being directed by one of the tugmasters, who came on board for the purpose, she is not liable in rem for the injury to the other vessel, and the mere fact that she had a pilot on board, who gave no orders and took no part in the maneuver, is immaterial.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. § 71.*]

**2. COLLISION (§ 71*)—LIABILITY—TUG EMPLOYED TO ASSIST OTHER TUGS.**

A tug employed by the owner of other tugs to assist them in shifting a steamship at her pier cannot be held liable for a collision between such ship and another vessel during the maneuver, which was under the sole direction of the master of one of the other tugs, where she herself was not chargeable with any fault or negligence.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. § 71.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

In Admiralty. Suit for collision by British & South American Steam Navigation Company, Limited, as owner of the steamship Hyades, against steamship Gallia, and the tugs W. J. McCaldin, McCaldin Bros., and Walter B. Pollock, impleaded. Decree against the W. J. McCaldin and McCaldin Bros. only.

J. M. Woolsey, of New York City, for libelant.

J. K. Symmers, of New York City, for the Gallia.

R. J. Bullowa, of New York City, for the W. J. McCaldin and McCaldin Bros.

J. J. Macklin, of New York City, for the Water B. Pollock.

HOUGH, District Judge. [1] That by negligence on the part of some one the Gallia came in contact with the Hyades in the Atlantic Basin on February 1, 1908, has not been denied.

The Gallia, without steam up, was lying at Pier 33, and, desiring to shift to the other side of the pier, employed the McCaldin firm to furnish power for that purpose. That firm sent two of their own tugs and employed the Walter B. Pollock to assist. A Sandy Hook pilot was on board the Gallia; his employment was merely for this transit. The tugs moved the Gallia, but the force of the wind was miscalculated, and the steamship going astern went too far, and, first, collided with one of two lighters lying alongside the Hyades (moored at another pier), and then struck the Hyades herself.

The pleadings and evidence raise several questions, viz.: (1) Did the Hyades receive any substantial injury? (2) If she did, is the Gallia responsible therefor? (3) Does the tug Pollock stand upon any different basis from the other tugs proceeded against?

By a very clear preponderance of evidence I am satisfied that the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rail or bulwark of the Gallia struck the port side of the Hyades some 30 feet forward of her stern, so as to scrape paint and indent a plate.

From the testimony adduced at the trial I am not satisfied that the Hyades received any substantial injury on her starboard side through collision with the Gallia. The principal question of fact is whether is was possible, the contours of the vessels being as they were, for the side of the Gallia to come in contact with the propeller blade of the Hyades.

By a fair preponderance of evidence I am satisfied that immediately after the collision some 10 inches of the end of one of the propeller blades of the Hyades was found to be freshly broken off. By a very clear preponderance of evidence I am satisfied that the Gallia was so low in the water that it was entirely possible for her to ride under the counter of the Hyades to an extent sufficient to enable her to come in contact with the propeller blade.

It is therefore held that the Hyades, by contact with the Gallia, did some substantial injury by damage to her propeller blade. It is also found that she received some injury to her paint and plating on her port side. Whether the same be substantial is left to the Commissioner to ascertain. It is further found that there is no satisfactory evidence that the Gallia caused any substantial injury to the Hyades on her starboard side.

The libelant may, however, submit the testimony on this hearing, and such further testimony as it chooses regarding injury to plating on both port and starboard sides, to the Commissioner. If, however, the ultimate finding shall be against substantial recovery for such damages, the costs of the reference or a reasonable proportion thereof will be assessed against the libelant.

If there had been no pilot on board the Gallia, it would be quite impossible to hold that vessel for the damage above referred to under The Alvena (D. C.) 78 Fed. 819; Id., 78 Fed. 924, 24 C. C. A. 411, and cases cited.

The testimony is very plain that, although the pilot was on board, he gave no orders for and took no part in shifting the Gallia after he had advised the master of the "W. J. McCaldin" that all was ready. Capt. Howe of the McCaldin came on board the steamship and there remained until the maneuver was completed. He gave the orders to start and stop, and after he got into trouble called another tug to assist in extricating the Gallia from the embarrassing situation in which his own tugs had placed her. There is no difficulty in fixing the responsibility for this collision upon the tugmaster. The question therefore is whether the mere presence on board of a pilot, who did not control the tugs, did not attempt to control them, and gave neither the orders which produced disaster nor those which extricated the Gallia from trouble, is sufficient to fix liability in rem upon the vessel employing him.

In The Edgar Baxter, 8 Ben. 162, Fed. Cas. No. 4,278, the evidence showed that the movements of the ship in tow were "under the direction of a pilot who was on board of and belonged to and was in the employ of" said ship. There it was said the "tug furnished only the

motive power, while the guidance of the two vessels (tug and tow) was in the pilot." The ground of decision which in that case absolved the tug was that the pilot and not the tugmaster was the directing mind. The decision relied on by counsel for McCaldin (Albina Ferry Co. v. Imperial [D. C.] 38 Fed. 614, 3 L. R. A. 234) proceeds upon the same ground.

In my judgment the mere presence of the pilot makes no difference in the rule recognized in the Alvena, supra. Responsibility and liability must depend upon matters of substance and not on mere form. If the pilot had really been in command, the ship would have been primarily responsible, even though the proximate cause of damage had been the disobedience or incompetence of tugmasters who were furnishing the motive power. But this pilot was not in command, and he was guilty of no personal negligence. Therefore the ship with which he is identified is absolved.

[2] The tug Pollock was not employed to· move this ship. She had no contractual relation with the owner or master of that ship. She was but a helper to the McCaldin tugs. No act of negligence on the part of the Pollock is shown, and therefore no ground of liability is disclosed. Strictly speaking, a decree should pass against the tug "W. J. McCaldin" only; but, the two McCaldin tugs having been claimed in the same interest and united in answering, a decree will pass against both.

The libel is dismissed as to the Gallia and the tug Pollock; costs to follow the decree.