THE PENNSYLVANIA RAILROAD COMPANY, a corporation of the State of Pennsylvania, Plaintiff Below, Plaintiff in Error, *v.* EASTERN TRANSPORTATION COMPANY, a corporation of the State of Delaware, Defendant Below, Defendant in Error.

(*February* 25, 1935.)

WOLCOTT, Chancellor, LAYTON, C. J., HARRINGTON, RICHARDS and REINHARDT, J. J., sitting.

*William S. Potter* (of Ward and Gray) for plaintiff in error.

*Robert H. Richards, Jr.*, (of Richards, Layton and Finger) for defendant in error.

Supreme Court, No. 6, October Term, 1933.

LAYTON, C. J., delivering the opinion of the Court:

This case is before the Court on a writ of error to the Superior Court for New Castle County to review a judgment in favor of the defendant on a directed verdict.

The action was in case to recover damages resulting to the plaintiff's drawbridge over the Hackensack River in the State of New Jersey, occasioned by a collision of the defendant's barge under tow with the bridge.

The plaintiff counted upon the failure of the barge to maintain a proper look-out, and the failure to use reasonable care in steering.

Briefly the facts are these: On the day of the collision the defendant's barge was being towed down the Hackensack River by the tug, Raymond Card. At a point in the river there were three drawbridges in close proximity, first the county bridge, next the twin bridges of the plaintiff. The county bridge was distant about 540 feet from the plaintiff's bridge. These bridges were protected by racks or fenders which extended almost continuously the entire distance between the bridges affording a narrow channel for passage. The plaintiff at the time maintained a tug, Naütic, to assist vessels through its bridges. The practice was, at some distance from the plaintiff's bridge, for this tug to pass a line from its stem to the stern of the tow and, by the controlling power thus exerted, to keep the tow straight through the draws. Accordingly a line was passed

from the Nautic to the barge. The barge hit the east side of the plaintiff's freight bridge and swung over, whereby the overhang of the barge's bow hit the superstructure of the bridge causing damage thereto. The barge was equipped with a rudder, and it was admitted that it was its duty to make use of it. The tug was moving at a rate of three or four miles an hour through the racks and draws which were so narrow that the barge had a clearance of at most three feet, but no point was made of this circumstance, nor was effort made to fasten negligence upon the propelling tug.

The plaintiff relied upon the presumption of negligence arising from the collision of a moving vessel with a stationary object. The defendant essayed to prove that the cause of the collision was a sudden sheer of the barge caused by the casting off of the line from the Nautic to the barge as it was about to enter into the draw of the bridge. The plaintiff's testimony in this regard was that the line was cast off at some distance from the bridge, and that the sheer was not occasioned thereby.

At the conclusion of the plaintiff's case, the defendant moved for a non-suit on the ground that there was no proof of negligence on the part of the barge, which motion the trial court properly refused, with the suggestion that a motion for binding instructions be made at the close of the testimony. This motion was accordingly made, but the court was of opinion that the rule laid down by the former Court of Errors and Appeals, in *Brady v. Jefferson,* 5 *Houst.* 60, applied, and directed a verdict in accordance with that rule. We do not understand from the record, however, that the defendant abandoned its reason for a directed verdict, that is, failure to prove negligence on the part of its barge and proof of negligence on the part of the Nautic in casting off its line.

The assignments of error present one question, the error of the court below in either failing to distinguish, or to overrule the authority of *Brady v. Jefferson.*

In that case, the majority of the court were of the opinion that the relation existing between tug and tow was that of principal and agent and, under the rule of *respondeat superior,* the power of the tug over the course and navigation being practically paramount and controlling, it followed that the responsibility should attach to the principal, the tug, for any injury happening to innocent third parties from collision with the tow in charge of the tug.

The learned judge below was not able to distinguish the case from the one on trial before him, and properly applied the rule announced by the then court of last resort.

This court is asked either to distinguish, or to overrule *Brady v. Jefferson.* There the action was against the tug, and the special circumstance appeared that the owners of the tug had the exclusive right and privilege, by agreement with the canal company, of towing vessels on the canal, a circumstance which was emphasized in argument and may have influenced the court. Notwithstanding these circumstances we are of opinion that the court ruled, and intended to rule, that the tug, as principal, was responsible for injury occasioned by its agent, the tow, to a third party not in fault.

The rule there announced is contrary to the rule generally observed in the United States. It is now established that the tug is an independent contractor, and that neither the tug nor the tow is liable for the faulty navigation of the other. 11 *C. J.* 1082-1084; 24 *R. C. L.* 1442-1450, *et seq.;* 19 *Ann. Cas.* 301; *Sproul v. Hemmingway,* 14 *Pick.* (*Mass.*) 1, 25 *Am. Dec.* 350; *Martin v. Northern Transp. Co.* (*The Maria Martin*), 12 *Wall.* 31, 20 *L. Ed.* 251; *The White City,* 285 *U. S.* 195, 52 *S. Ct.* 347, 76 *L. Ed.* 699. This rule is consonant with reason and fairness and should prevail. Accordingly, the authority of *Brady v. Jefferson* is overruled.

A new trial, therefore, must be awarded unless, as is

contended by the defendant, the record clearly discloses that the injury occurred through no fault of its barge, but, definitely, because of the failure of the Nautic to fulfill the purpose for which it was hired by the plaintiff. This contention must be examined. The plaintiff relies upon a presumption of negligence arising when a moving vessel strikes a stationary object. *The Virginia Ehrman,* 97 *U. S.* 309, 24 *L. Ed.* 890; *The Albert N. Hughes* (*C. C. A.*), 92 *F.* 525; *The Henry O. Barrett* (*D. C.*), 156 *F.* 417; *The Cromwell* (*C. C. A.*), 259 *F.* 166; *U. S. v. Norfolk-Berkley Bridge Corp.* (*D. C.*), 29 *F.* (*2d*) 115.

Upon proof of the collision of the barge, a moving vessel, with the bridge, a lawful stationary obstruction, by rule of law, the plaintiff established a *prima facie* case, and the burden of going forward with the evidence was cast upon the defendant. 1 *Jones, Ev.* (*2d Ed.*), § 31; *Greenleaf, Ev.* (*16th Ed.*) 102; 2 *Wigmore, Ev.,* § 2487, *et seq.* To sustain the burden, or to rebut the presumption, the defendant undertook to prove that the Nautic, which had been hired by the plaintiff for the purpose of assisting vessels through its bridges, attached itself to the barge, and, instead of remaining attached and thereby assisting in the guidance of the barge through the narrow draw, cast off its line when the barge was about to enter the draw of the plaintiff's bridge and that this caused the barge to jump forward and sheer thereby causing the collision.

The difficulty with this contention is that the evidence in this respect is hopelessly confused and contradictory. The captain of the Nautic testified on direct examination that he cast off from the barge as it was entering into the racks of the county bridge, which bridge was distant from the plaintiff's bridge about 540 feet. On cross-examination his testimony was to the effect that he cast off at a distance of 1,700 feet from the county bridge, in fact, that he maintained the line on the barge a distance of about 200 feet

only. He was positive, however, that the barge did not sheer immediately upon the casting off of the line, and not until it had proceeded, as he said, "down the river quite a ways further."

The testimony of the captain of the barge is likewise unsatisfactory. On direct examination he stated that the barge, immediately upon the casting off of the line, "shot ahead" and "fell over to the eastward and our port side hit the abutment and she bounced over, and she had only about a foot play, and our top hit the construction work on the bridge." He insisted that, after the line was cast off, he was unable to control the barge with the rudder for want of steerage way. At what precise point, however, the line was cast off, he left in doubt. On direct examination he testified that it was cast off when the barge had entered the draw of the bridge "where we hit." On cross examination, it was not at all clear whether the witness meant to say that the line was cast off when the barge was in the draw of the plaintiff's bridge, or in the racks of the three bridges some distance from the plaintiff's bridge.

If the sheer of the barge was, in effect, coincidental with the casting off of the line, the inference would be strong, if not compelling, that the release of the line caused the sheer and the consequent collision and damage, there being a clearance in the racks and draw of two or three feet only. On the other hand, if the line was released at some distance from the plaintiff's bridge, and the sheer did not occur at once, but only after the barge had proceeded some distance, the inference might well be drawn that the collision resulted from faulty steering on the part of the barge, especially in view of the fact that the barge had passed through this draw safely a number of times, and without the aid of a rear controlling tug.

As it is, there is an issue of fact for determination by jury.

The defendant contends that in the case of tug and tow the presumption of negligence is against the tug which is in command of and responsible for navigation, and it urges that in none of the cases cited did the court base a recovery against a tow on a mere presumption of negligence, citing *The C. W. Mills (D. C.)*, 241 F. 204, where it was said, "If the tow collide with some vessel on the voyage, it is not liable for the damage caused thereby, unless some negligence contributing to the collision be proved against the tow." This would seem to be a correct statement of the law, but it does not follow that the court meant to say that no presumption of negligence arises against a tow. All that was meant was that, if, upon hearing, the tow was found to be without fault, the tow, not being responsible for the acts of the tug, will not be held liable. An admiralty judge sitting as a jury would not, in such case, assess liability against the tow; but it would seem to follow that if the tow did not convince the judge that it was without fault, the tug not being in fault, he would be bound to allow the presumption of negligence.

In *Connolly v. Brandywine Granite Co. (D. C.)*, 108 F. 99, the barge in tow had no rudder and her movements were controlled entirely by those of the tug. In *The Avalon (D. C. )*, 208 F. 654, the master and owner of the tow was found in fault. In *The Cromwell (C. C. A.)*, 259 F. 166, the tow at the time of the collision was being navigated by the master of the tug. In *The C. W. Mills, supra,* the tow was found to be without fault, and the tug in fault. In *The Gallia (D. C.)*, 196 F. 509, the tow without steam, was under the direction of a tugmaster. In *Sturgis v. Boyer,* 24 *How.* 110, 16 *L. Ed.* 591, the tow was lashed to the tug which was in exclusive control.

The presumption of negligence arising against a moving vessel under tow in colliding with a bridge may, of course, be rebutted. *The Cromwell, supra.* Generally,

whether the presumption has been rebutted is for the jury. *Patterson v. Railway*, 210 *Pa.* 47, 59 *A.* 318.

If the defendant had shown by clear, credible and uncontradicted evidence want of negligence on the part of its barge, and that the collision and resulting injury were occasioned by the casting off of the line as the barge was entering, or about to enter, into the plaintiff's bridge, and arrayed against this evidence there was the presumption merely, it might be argued that the court, as a matter of law, would be required to say that the presumption of negligence had been rebutted. 1 *Jones, Ev.* (*2d Ed.*), § 32; however, does not confront us.

The judgment must be reversed and a new trial awarded, and it is so ordered.