### NORTH AMERICAN DREDGING CO. v. CUTLER et al.

(Circuit Court of Appeals, Ninth Circuit. May 4, 1908.)

#### No. 1,515.

1. COLLISION—INJURY TO PERSONS BY VESSEL—EVIDENCE.

   Where it is shown that a tug with a tow was in fault for a violation of the statutory rules of navigation, and such fault was sufficient to account for an accident in which a person was injured, she has the burden of proof to show beyond a reasonable doubt that another vessel either caused or contributed to it.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, §§ 83, 84.]

2. SAME—LIGHTS ON TOW—DUTY TO TUG.

   It is the duty of a tug with a tow to see that such tow carries a light at night; and an overtaking vessel is not required to look to the lights on the tug which she may not be able to see clearly to ascertain the fact that there is a tow.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, §§ 105–123.]

3. SAME—FAULT AS CAUSE OF COLLISION—ABSENCE OF LIGHTS.

   A launch going out from a harbor in the evening overtook a tug going in the same general direction, and, turning to starboard to pass under her stern, ran into a towing rope, and libelant was injured. The tug in fact had two mud scows in tow on a line, but they carried no lights which could be seen from the launch, although the tug carried towing lights. A danger signal was given by the tug a second or two before the accident, but too late for the launch to avoid it, even had it been understood. *Held*, that the accident was due solely to the fault of the tug in failing to carry lights on the scows.

   [Ed. Note.—Collision with overtaking vessel, see note to The Rebecca, 60 C. C. A. 254.]

Appeal from the District Court of the United States for the Southern Division of the Southern District of California.

The appellee Cutler filed a libel in personam against the appellant, alleging that on the night of May 12, 1906, while he was working as a deck hand on the launch Francis, which was proceeding across the outer harbor of San

Pedro, the launch came up to the Sea Witch, a tug belonging to the appellant, proceeding ahead of and in the same general direction with the launch, the lights of the tug not being visible; that the lookout on the launch gave warning, whereupon the wheel of the launch was immediately ported, and she went to the starboard; that while passing the stern of the tug the launch discovered for the first time that the tug had a long tow line attached to some vessel astern; that thereupon and immediately the engines of the Francis were reversed, but too late to prevent a collision with the tow line; that by that collision the said appellee received serious bodily injuries; that the vessel in tow had no light or lookout, and the Francis had no warning or knowledge of her presence, and that the tow line was of an unsafe and dangerous length, to wit, over 800 feet. The appellant answered, alleging that the Sea Witch had two scows in tow, and that the tug and the scows had all the lights required by law properly placed and burning; that on discovering the light of the Francis approaching on the port quarter, and headed directly for the tug, the pilot of the latter blew the danger signal, and the tug's engines were stopped. The appellant thereupon interpleaded the Francis, alleging that after the tug blew the danger signal the Francis had time to port her helm, and change her course so as to avoid fouling the hawser, and that the Francis was in fault, in that she had no competent or attentive lookout, that she was running at too great a speed, that she did not seasonably port her helm, and that she did not seasonably reverse her engines. Upon the evidence taken on these issues, the District Court found that the appellant was guilty of negligence, in that the scows towed by the tug were without the lights required and prescribed by law, and that the failure of the appellant to provide and show said lights was the proximate cause of the injury to the appellee Cutler, and that the launch was not guilty of any negligence contributing thereto. It was decreed that the said appellee recover from the appellant the sum of $3,500, with costs.

Wm. M. Hiatt, J. S. Spilman, and Page, McCutchen & Knight, for appellant.

Eugene Overton and Wilbur Bassett, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The tug Sea Witch, having two loaded mud scows in tow, was proceeding from a point near the entrance of San Pedro Harbor, to a point outside the breakwater. The launch Francis was proceeding on the same general course, carrying a fishing party to Catalina Island. She had on board, including her crew, 29 persons. She was about 35 feet in length, and could be turned around in about four lengths of herself, and, going at full speed, she could turn at right angles in about 8 or 10 feet. She had lookouts posted in the bow, and a number of passengers were on the forward deck looking ahead. The approaching lights of the steamer Cabrillo were observed ahead coming in on the port side of the channel. A lookout on the Francis discovered the outline of the Sea Witch dead ahead, and passed the word to the master, who was at the wheel. The master ported his helm, and turned his bow to starboard to pass the stern of the tug, and within a very few seconds the Francis collided with the towing hawser extending from the stern of the tug to the bow of the forward barge in tow. Two or three seconds before the collision the tug blew her whistle. There was testimony that four blasts were given as a danger signal to the launch. There was other testimony that but two blasts were given, which would be the appropriate signal to the approach-

ing Cabrillo that the tug would hold her course to starboard. The appellant does not dispute the right of the appellee Cutler to recover judgment, nor does it contest the amount of the damages awarded him. It presents the question whether the Francis or the Sea Witch should answer in damages, or whether the damages should be divided. There was conflict of testimony on the question whether the barges carried the lights required by law. Probably the preponderance of the evidence is that, if she carried lights, they were placed at an insufficient height above the deck to enable the lookouts in the bow of the Francis and the passengers on the deck thereof to see them. But, even if the preponderance of the evidence were not to that effect, we should not be disposed to disturb the finding of the court below made on that branch of the case on the conflicting testimony.

It being established, then, that the appellant was at fault in not carrying the proper lights upon the scows, and that the violation of a statutory rule intended to prevent collisions was a cause of the accident, the burden falls upon the appellant to show that its default in that respect was not the proximate cause of the accident. In the City of New York, 147 U. S. 72, 13 Sup. Ct. 211, 37 L. Ed. 84, the court said:

"Where fault on the part of one vessel is established by uncontradicted testimony, and such fault is of itself sufficient to account for the disaster, it is not enough for such vessel to raise a doubt with regard to the management of the other vessel. There is some presumption at least adverse to its claim, and any reasonable doubt with regard to the propriety of the conduct of such other vessel should be resolved in its favor."

The appellant contends that the Francis had no competent lookout, and that, in addition to this fault, her master was acting both as helmsman and engineer, while the engineer was on deck. On a careful consideration of the testimony, we are inclined to the opinion that the Francis had at least one competent lookout, nor do we find in the fact that the master was at the helm, a contributing cause to the accident. The Francis was an overtaking vessel, and, of course, the side lights of the Sea Witch were not visible to her. When the outlines of the Sea Witch were observed, the question on the Francis was which way to turn. To have gone to port would have been to go into the path of the approaching Cabrillo. There was no apparent reason why she should not turn to starboard and pass under the stern of the tug, if there were no lights visible on the scows, and there was nothing to warn her that the tug had scows in tow, or that such a course involved danger of collision.

But the appellant contends that the lights carried by the tug denoted a tow, and that, if the lookouts on the Francis had been attentive and competent, they would have known from the presence of those lights on the tug that she had a tow in charge. There is some conflict in the testimony as to the lights discernible on the tug just prior to the collision, but we may accept the testimony of the officers of the tug that she carried two masthead lights six feet apart, two side lights, and one bright light abaft the smokestack. If these lights indicated that the tug had a tow, it was incumbent upon the lookout on the Francis to know that fact and to report it immediately to

the master or to the helmsman. It seems to be the theory of the regulations adopted by Congress for the prevention of collisions in harbors, rivers, and inland waters of the United States (Act June 7, 1897, c. 4, 30 Stat. 96 [U. S. Comp. St. 1901, p 2875]) that, when a vessel is towed by a tug, the tow shall carry certain lights, and that an overtaking vessel is not required to look to the lights on the tug for information that it has a tow, although the tug is required to indicate that fact to meeting vessels by carrying in front of the foremast two bright white lights in a vertical line, one above the other not less than three feet apart. A vessel overtaking a tug is not always in a position to see those lights clearly, or to discover that they are placed vertically the one above the other, and thereby to distinguish them from the lights which all sea-going steam vessels are permitted to carry. It is true that the statute permits a steam vessel when towing another vessel to carry a small white light abaft the funnel or aftermast for the tow to steer by, but this is not obligatory, and the light so carried is obviously not intended to indicate to an overtaking vessel that the tug has a tow in charge, and there would seem to be no way by which such overtaking vessel could distinguish such a light from the white light required to be exhibited by a steam vessel on perceiving that she is in danger of being overtaken by another vessel. The appellant argues that, after the warning signal given by the tug, a spoke or two of the starboard helm of the Francis would have cleared her, and avoided the collision, since it is very easy for an overtaking vessel to clear There is dispute in the evidence as to whether a warning signal was given. But, if it were, the preponderance of the evidence would indicate that it was given only about two seconds before the collision. Even if there had been ample time to respond to it, we see no reason for saying that it should have been interpreted by the helmsman of the launch as a warning that there was a vessel in tow of the tug. We find nothing in the record to justify us in disturbing the finding of the District Court that the launch was not guilty of any negligence contributing to the injury.

The decree will be affirmed.