## THE PROTECTOR.

### THE MATTIE L. JOHNSON.

(District Court, E. D. North Carolina. October 5, 1914.)

No. 132.

COLLISION (§ 95*) — TOWS MEETING AT NIGHT — FAILURE TO CARRY PROPER LIGHTS.

A collision at night on the Cape Fear river, between a tow going up, consisting of two lighters alongside of a motor tug, and a barge in tow on a 300-foot line passing down, *held* due solely to the fault of the up-bound tow in failing to carry the lights required by the regulations, or to give any passing signal; it being shown that neither lighter carried any light, and that the only light which could be seen from the approaching tug was a single white light, which led its pilot to suppose it was a vessel at anchor, when at the time of collision it was on a crossing course.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*]

In Admiralty. Suit for collision by D. McEarchern and others, owners of the motor boat Topaz and lighters in tow, against the steam tug Protector and the barge Mattie L. Johnson and their owner: Decree for respondents.

John D. Bellamy & Son, of Wilmington, N. C., for libelants.

Robert Ruark, of Wilmington, N. C., for claimants.

CONNOR, District Judge. From the evidence, in regard to which there is but little contradiction, it appears that on the night of, January 15, 1914, the gasoline tugboat Topaz, length 39 feet 6 inches, beam 11 feet, depth 6 feet, draft 36 inches, when loaded 40 inches, pilot house elevated above deck 6 feet, left the fish factory, on the Cape Fear river, below Wilmington, N. C., having in tow two lighters, Nos. 4 and 5, of 75 feet length, 20 feet beam, 5 feet depth, "decked over, bulkheads across, and used for transferring stuff about the river," and started up the river to Wilmington. The lighters were lashed to the tug, on each side, lashed together, "formed, practically, a 'V' shape, with which, in the closed end of the 'V' the motor boat put her bow between them." Four hundred and fifty barrels of fish oil were loaded upon the lighters, standing upon end. The Topaz carried a green light on the starboard side, red light on the port, a white light in the middle, and two mast lights on the stern. The white light was in the middle, between the green and the red lights, on top of, the pilot house." There was no light at the bows of, or elsewhere on, the lighters. The tug was in charge of L. L. Bryant. He had no license to act as captain of motor boat, or any other kind of craft; never had any license; no license was required for the motor boat. The Topaz, with the lighters in tow, as described, left the factory at about 7:30 p. m., going up the river. The night was dark—starlight. At about 8 o'clock, when she had proceeded up the river about 1½ miles, on the eastern side of the channel, with a flood tide—the channel being about 250 or 300 feet wide—Mr. Bryant saw the Protector with the Mattie L. Johnson in tow, approach-

ing about 1½ miles away. The channel runs "northeast and southwest slightly—a little north." The depth of the river in the channel was about 28 feet.

On the same day, at about 6:30 p. m., the Protector, a seagoing steam tug, having in tow the barge Mattie L. Johnson, left Wilmington, N. C., going down the river. The barge is about 190 feet long, 36 feet 6 inches wide, 18 feet high, "pilot house on her aft 7 feet, and the pilot house 7 feet more, draft, when loaded, 14 feet, at this time about 6 feet 4 inches. "She was light." The barge carried a red light on the port, green on the starboard, and "two white lights up on the flagpole aft, about 2½ feet apart." The Protector carried two masthead lights, and red lights and green lights. "She was electrically lighted all over." L. J. Pepper, regularly licensed as a first-class pilot, and "master for steam vessels," was in command of the Protector, as pilot, actively engaged in and directing her navigation. William D. Schwartz, having a government license as master and pilot, was, on this occasion, acting mate on the Protector. Capt. Brown was her master. C. W. Johnson was master and part owner of the barge Mattie L. Johnson. He was in command, on January 15, 1914, at the wheel, going down the river.

Mr. Bryant says:

"On first seeing the Protector, I got to the east of the channel to allow him to pass to the westward, and stayed there. When I first saw her coming, until she was half or three-quarters of a mile from me, and I saw she was headed straight toward me, heading on the river toward me, trying to take up the range, I still got further to the eastward to get out of her way, and she headed right straight for me, and crossed and ran me down. She went across my bow."

The barge struck the lighter, No. 5, on the port side about amidships—the left side going up the river. The lighter No. 5 and the motor boat Topaz were sunk, and lighter No. 4 was injured. "The Topaz sunk right where she was." She was found the next morning about 300 feet from the center of the channel; water there about 16 feet deep. When the barge struck the lighter, the motor boat was "headed" northeast—"headed more to the eastward to get clear of the boat." Bryant gave no signal. When he saw the Protector approaching, she was in plain view.

"I was clear of her at that time—did not think a signal necessary. I was out of the channel—could have given signal at any time until the lighter was struck; lights were burning."

Several witnesses on the motor boat, at the time of the collision, were examined, all of whom gave substantially the same account of the collision, etc.

Mr. Pepper, the pilot in charge of the Protector, says:

"Just about the time the collision took place, dark night, starlight, we were going down the river with the ranges on, right in the channel, course south-southwest; saw one bright, white light; saw nothing at all, except one bright light; saw this light all the time; was about one mile and a half from where we collided, when first saw light; it was an anchor light. Told Capt. Schwartz that it was some small boat anchored there, and it was a good point to steer by; did not know then it was under way. When about 50 yards away, saw the shadow of the tow; there was only one light. The motor boat was headed about east; was about two points on our side and heading right for

us. As soon as I saw there was something in motion, I immediately stopped the tug. I saw it was his intention to go across the barge's bow, and I let my hawser down, so he could go right across it. The wind blew about west, ordinary breeze; tide about to the eastward. Saw but one light on the Topaz. There was nothing after I discovered that the Topaz, with her tow, was moving, that I could do to prevent the collision; too short a time to do anything other than what I did."

To the question:

"If the Topaz and her tow had been showing red and green lights, and a white light on her stern, or near her stern, and two lights on her beam, to indicate a tow in motion, could and would you have entirely avoided this accident?"

—he answered:

"Of course, I would have gone to the other side of her. The rules of the road are to keep to the right of her, but she appeared to be weighed on an anchor."

All of the witnesses concur in saying that there is ample room in the channel for the boats and their tow to have passed without danger of collision. The barge had 300 feet towline—was moving about 8 miles an hour. As affecting the value to be given Mr. Pepper's testimony, it is shown, on cross-examination and his personal appearance, that he wore glasses. He is 64 years of age; had pilot's license 41 years, and master's license 31 years. He denied that there was any other weakness in his capacity to see than was incident to his age; was examined, as required by the regulations, 2 years ago.

Capt. Craig, a licensed bar and river pilot for 37 years, and master of steam vessels 12 years, testified to Mr. Pepper's good character and that he had a good record as a pilot. He said that he was familiar with the river at the point where the collision occurred. When asked by the court what course the Topaz should have taken, he said:

"She could have gone most any way, except the way she did. He had almost all the room in the channel. * * * He could have taken either side and gone up in perfect safety. The Protector should have been running with the ranges, and in the center of the channel; that would have been proper navigation. Capt. Pepper's testimony indicates that the Topaz was going directly across the channel, the way the barge struck her. Taking the testimony of all the witnesses, it would indicate that the Topaz was going across the channel eastwardly."

Capt. Williams, the harbor master at the port of Wilmington for 20 years, holding a license as master of steam vessels for 45 years, says that he has known Capt. Pepper "pretty much all of my life," and his general character is good—his reputation as a pilot is good. He further says:

"I have passed, all of my life, vessels of different draft, without any accident, at that point and at different points on the river."

Capt. Johnson, the master and part owner of the barge Mattie L. Johnson, was at the wheel when approaching the place of the collision. He says:

"I did not see any red light or green light on the Topaz, or the lighters. I saw a white light · just one."

He says that the place at which he was standing in the pilot house was about 32 feet above the water; could have seen the red and green lights all right, if they had been up above the lighters. The bow of the barge struck the lighter.

Capt. Schwartz, in his deposition, corroborated Mr. Pepper in regard to the light as seen on the Topaz, and the course pursued by the Protector. He was in the pilot house at the wheel.

On rebuttal, Mr. Bryant was asked whether he knew of the rule which required a tug, when towing two or more boats abreast, that colored lights should be carried at the outer side of the bow of the outside boat, and answered that he did not—that he had no lights on the bow of the lighters. He says that the white light was "as far forward, and as near the stem of the boat, as was practicable to place it." If he had put the white light down on the deck below, it could not have thrown a light on either side; that, in order to comply with the law, it was necessary to put the white light on the pilot house; that he showed a white light aft, on the starboard side a green light, and on the port side a red light; that these would throw an unbroken light over the arc of the horizon 10 points on the compass. He further said that with a tow he would have put another white light on the mast, not less than 3 feet apart; "two lights indicate that you have a tow, whether at the stern or alongside. The channel of 250 or 300 feet in width, 25 feet deep, gave ample room for the two boats, with their tows, to have passed in safety."

The government chart of the river shows that, for a much greater width, there was water from 9 to 17 feet deep at the point of the collision. By the rules prescribed by the Department of Commerce for lights for barges in tow of steam vessels navigating the harbors, rivers, and inland waters, it is required that:

"Barges towing astern of steam vessels, when towing singly or tandem, shall carry a green light on the starboard side and a red light on the port side and a white light on the stern," etc. "When two or more boats are abreast, the colored lights shall be carried at the outer side of the bow of the outside boats."

In The Lyndhurst (D. C.) 92 Fed. 681, Judge Brown (S. D. N. Y.), referring to the failure to observe this rule, says:

"The requirement of the inspector's rule * * * imposes a duty also on the tow to carry lights as specified, and this includes the duty of attention to the lights required to be exhibited so as to keep them in proper condition. In towing upon a hawser it is not reasonable to hold that the tug alone should attend to and keep up such lights."

In The Eugene Moran (D. C.) 143 Fed. 187, Holt, District Judge (N. D. N. Y.), says:

"I think that both the Moran and the scows were in fault for not having up lights on the scows. * * * The authorities establish that, under those circumstances, it was the duty of the master of the tug and the men on the scows to see to it that the lights required by law to be on the tow were in place and lighted."

In North American Dredging Co. v. Culter, 162 Fed. 457, 89 C. C. A. 343 (C. C. A. 9th Cir.), Gilbert, Circuit Judge, said:

"It seems to be the theory of the regulations adopted by Congress for the prevention of collisions in harbors, rivers, and inland waters of the United States * * * that, when a vessel is towed by a tug, the tow shall carry certain lights, and that an overtaking vessel is not required to look to the lights on the tug for information that it has a tow, although the tug is required to indicate that fact to meeting vessels by carrying in front of the foremast two bright white lights in a vertical line, one above the other not less than three feet apart." Article 3, Rules, etc.

It is manifest, from the evidence in this case, that neither of these rules were obeyed by the Topaz or the lighters, which she had in tow. The Protector and her tow, the barge Mattie L. Johnson, both carried these lights required by the rules. Under these conditions the rule of liability is announced by the Supreme Court in The City of New York, 147 U. S. 72, 13 Sup. Ct. 211, 37 L. Ed. 84:

"When fault on the part of one vessel is established by uncontradicted testimony, and such fault is, of itself, sufficient to account for the disaster, it is not enough for such vessel to raise a doubt with regard to the management of the other vessel."

The uncontradicted testimony of those in charge of the Protector and the Mattie L. Johnson tends strongly to show that if the tow—the lighters—lashed to the Topaz had carried the lights, or the Topaz had carried the two white lights, as required by the rules, the collision would have been avoided. It is evident that Capt. Pepper was led to believe by the single white light carried by the Topaz that she was at anchor, and in the absence of the two lights on the motor boat, or any lights on the lighters, there was nothing to indicate that the tug was in motion, or the presence of the lighters, until, by the shadow of the tow, 50 yards off, when he immediately stopped the tug, and, seeing that it was the intention of the master of the Topaz to go across the bow of the barge Mattie L. Johnson, let his hawser down so that she could cross in safety. It is manifest from the testimony of Capt. Craig, an entirely disinterested witness, intelligent, and a skilled pilot, having long experience in navigation on the river, that Mr. Bryant, for some reason, did not understand the situation, or failed to exercise a correct judgment. He admits that he did not give any signal when he saw the Protector approaching, because he thought he had the right of way.

Viewed from either aspect, I am brought to the conclusion that the collision was due to the failure of the master of the Topaz to obey the rules in regard to lights prescribed for the prevention of collisions, and erroneous navigation under the circumstances, and that no liability attaches to the conduct of the Protector or the Mattie L. Johnson.

A decree may be drawn dismissing the libel, with cost to be taxed by the clerk.